PARDON TILLINGHAST v. NICHOLAS S. FRY.

A deed, quitclaiming to the grantee all the grantor's interest in and to a certain tract of land, had these words : " Together with the *reserve* which I, the said J. N. (the grantor) do *reserve* out of the said sales, for myself, my heirs and assigns, my half undivided part of the grist-mill," &c. *Held*, that, by these words, it was the intention of the grantor to keep something back which would have otherwise passed ; that the words, " out of the said sales," were tantamount to the words, *out of the operation of the deed;* and that the " half undivided part of the grist-mill," &c. was what was reserved, and what did not pass to the grantee.

J. N., on the 8th March, 1813, purchased of W. S. and others, fifty acres of land, and, on the same day, executed and gave two mortgages of the whole, one to M. S. to secure an annuity of $ 60 during life, the other to the said W. S. and others, to secure the payment of $ 1000 on the decease of the said M. S. On the 6th June, 1825, J. N. having, in the mean time, erected a mill upon the *half acre* in question (part of the fifty acres,) conveyed to his son, G. W. N., in fee, one undivided half of the mill and appurtenances. On the 16th May, 1833, J. N. executed another deed to his son, quitclaiming his right to the whole fifty acres, reserving one half of the mill and mill lot ; and the son, on the same day, executed to his father a lease for the term of his natural life, of the whole fifty acres, including the mill and mill lot. On the 22d June, 1835, the son also executed a mortgage of the whole fifty acres to one J. R., to secure the payment $ 283, which was afterwards assigned to, and held by, the defendant. One year from the making of this mortgage, the son, by his deed of that date, conveyed to one B. L., in fee, the one undivided half part of the mill and appurtenances, and of the *half acre ;* which portion of the estate, after sundry mesne conveyances, passed, on the 25th January, 1838, to the complainant. On the 31st of the same month in the same year, the son executed another mortgage of the whole fifty acres to the defendant to secure the payment of nearly $ 2000. On the death of the son, the equity of redemption of the

whole tract was sold by the administrator, on the 7th March, 1840, and, in the same month, conveyed to the defendant. On the 3d May, 1842, J. N., the father, released to the complainant all his interest in one undivided part of the *half acre*. It was admitted, that the defendant was assignee of the mortgages executed by J. N. to M. S. and W. S., on 8th March, 1813. *Held*, that the complainant was entitled to redeem the mill estate owned by him, as set forth in his bill, from the equitable mortgage of the defendant, without paying the whole mortgage money, but upon contributing towards it such sum as, in equity, ought to be proportioned to the value of his estate compared with the whole ; that sum to be ascertained by a master.

This was a bill in equity, in which the complainant claimed to redeem premises to which he had title, without paying the whole amount of incumbrances. The facts will appear by the following opinion of the court, delivered by Brayton, J.

*A. C. Greene* and *Dixon*, for complainant.
*Shearman*, for defendant.

It appears by the bill and answer in this cause, that, on the 8th day of March, 1813, one Jonathan Nichols purchased of Wanton Spencer and others a certain parcel of land, containing about fifty acres, including the premises now sought to be redeemed, and on the same day executed two several mortgages of the whole tract purchased, — one to Marcy Spencer, to secure to her an annuity of sixty dollars during her life ; the other to Wanton Spencer and others, to secure the payment of \$1000 on the decease of the said Marcy.

About twelve years afterwards, viz., on the 6th day of June, 1825, the said Jonathan Nichols having, in the mean time, occupied the water power, and erected a mill upon the half acre in question, part of the fifty acres, by his deed of that date, conveyed to his son, Gorton W. Nichols, in fee, the one undivided half of the mill and appurtenances, and of the half acre.

And, on the 16th day of May, 1833, executed another deed to his son, quitclaiming to him all his interest, in and to "a certain tract or parcel of land lying in said North Kingstown, containing, by estimation, fifty acres, the same be more or less, together with the reserve which I, the said Jonathan Nichols, do reserve out of the said sales for myself, my heirs and assigns, my half undivided part of the grist-mill, and the privilege of the dam and pond, channel-way and water and water-courses, as it now is; and the above tract is bounded as follows, viz.: southerly and easterly on a highway; northerly on land of Thomas Nichols, now in possession of Palmer Gardner; westerly and southerly partly on land of William Briggs, and partly on land of Benjamin Lawton, and partly on land of George N. Arnold, to the first mentioned bound, or however the same may be bounded. The same part is called the Spencer farm. And we do hereby remise, release and forever quitclaim, all our right, title and interest to the premises aforesaid, to him, the said Gorton W. Nichols, and to his heirs and assigns forever."

One John Nichols also joined in this last deed, but for what purpose does not appear.

On the same 16th day of May, 1833, the said Gorton W. Nichols executed to his father, the said Jonathan Nichols, a lease for the term of his natural life, of the whole fifty acres, as well the farm lands as the mill and mill lot, which lease was duly recorded.

About two years after this, viz., on the 22d day of June, 1835, the said Gorton W. Nichols executed a mortgage also of the whole fifty acres to one Jonathan Reynolds, to secure the payment of the sum of $283 64, which was afterwards assigned to the defendant, and is now held by him.

One year after the making of this mortgage, the said Gorton W. Nichols, by his deed of that date, conveyed to one Ben-

jamin Lawton, in fee, the one undivided half part of the mill and appurtenances, and of the half acre. This portion of the estate, after sundry mesne conveyances, passed to the complainant on the 25th day of January, 1838.

On the 31st of January, 1838, Gorton W. Nichols executed another mortgage, also of the whole fifty acres, to the defendant, to secure the sum of $1882 46.

On the death of Gorton W. Nichols, the equity of redemption of the whole tract was sold by the administrator on the 7th day of March, 1840, and was, on the 24th day of the same month, conveyed to the defendant.

On the 3d day of May, 1842, Jonathan Nichols released to the complainant all his interest in the one undivided half of the mill and its appurtenances, and of the half acre of land.

And it is admitted that the defendant is also the assignee of the mortgages executed by Jonathan Nichols to Marcy Spencer and to Wanton Spencer and others, dated March 8, 1813.

The complainant claims to be the owner, in fee, of the whole of the mill and its appurtenances, and of the half acre of land, and now seeks to redeem the same from the mortgage made to Wanton Spencer and others on the 8th day of March, 1813.

In the argument of the cause, two questions are raised by the parties :

1. Whether the complainant is the owner in fee of the *whole* of mill lot, mill and appurtenances, or of the *undivided half only.*

2. Whether he can redeem that portion of the premises to which he has title without paying the whole amount of the mortgage money.

As to the first question, whether the complainant is entitled to the whole of the mill lot. It is admitted that the *half* of

the mill property, conveyed by Gorton W. Nichols to Benjamin Lawton, on the 21st day of June, 1836, passed to the complainant. To this the defendant makes no claim. It is also agreed that the other half of the said mill property passed to him by Jonathan Nichols's deed of May 3, 1842, *unless* the said half passed to Gorton W. Nichols, by the deed of Jonathan Nichols, dated May 16, 1833. So that the title depends upon the construction which shall be given to that deed of May 16, 1833.

In giving construction to written instruments, courts endeavor to give effect to the will and intent of the parties whenever that intent can be ascertained, and so far as the rules of law will permit ; that is, so far as the intent of the parties does not run counter to those rules ; and rather than that the clear intent of the parties should be defeated, will sometimes permit instruments to operate in a different mode from that contemplated by the parties at the time of execution. Indeed, in the argument of this cause, it is conceded that, whatever was the *intent* of the parties, as evidenced by the instrument itself, the Court is bound (if that intent be not against the rules of law) to give effect to. But the intent must be gathered from the instrument itself, and must be clear.

It becomes, therefore, material to inquire what was the intent of the parties to the deed of May 16, 1833. Does the deed evince an intent in the parties that Jonathan Nichols's interest *in the mill* should pass to his son, or be retained in himself? Had the land designed to be conveyed been described simply by the boundaries, as set forth in the deed, without the words, " together with the reserve which I, the said Jonathan Nichols, do reserve out of the said sales for myself, my heirs and assigns, my half undivided part of the grist-mill, and the privilege of the dam," &c., the whole

Tillinghast *v.* Fry.

estate would have passed to the grantee, all the land within the boundaries, because the intent would have been clear that all should pass.

But the deed does not stop here ; other words are used in the descriptive part of the deed to which we are bound to give effect, unless they are clearly repugnant to the general intent of the deed, or are so ambiguous that no certain and definite intent can be gathered from them. We cannot reject them simply because there is a repugnancy to what would otherwise be deemed the clear intent of the grantor, that is, simply because the words superadded limit the extent of the subject-matter of the grant, or the extent of the interest in the subject-matter as described by the former words. If the deed may well operate upon all that portion of the subject to which the superadded words limit the operation of the grant, there is no reason why such subsequent words should not be construed as a limitation and restriction of the former description, or as an exception. Indeed, had the grantor, instead of using the words before quoted, followed the description by the words " excepting from the operation of this deed my half undivided part of the mill," &c., there could have been no question that, however repugnant they may have been to the former words, the latter words would have limited the operation of the deed to the farm lands, and would have excluded the mill.

What, then, was the intention of the grantor when he used the words, " I, the said Jonathan Nichols, do reserve out of the said sales for myself, my heirs and assigns, my half undivided part of the grist-mill," &c. We must suppose that he meant something. He says, " I do reserve out of the said sales." He must have intended to keep back something which otherwise would have passed by the deed, to prevent the deed from taking from him something which was within the

former words. He reserved it " out of the said sales," that is, out of the deed, from the operation of the deed ; for the only sale anywhere mentioned, or referred to, or *said*, is the sale evidenced by the deed itself. The words, therefore, " out of the said sales," are tantamount to the words, " out of the operation of the deed." It was to be kept back, too, for himself, his heirs and assigns.

It is very evident, also, that the grantor did not intend by the last words to defeat the deed, — to prevent its operation entirely. He had used words of description which embraced more land than was designed to be conveyed. He therefore followed that description with such words as would exclude from it that part of the land which was not designed by the parties should pass ; at the same time leaving the deed to operate upon and to convey all the residue. What was it, then, which the former descriptive words had embraced, but which the parties did not design should pass from the grantor, but should be retained to himself, his heirs and assigns ? The grantor goes on to describe it by the words, " my half undivided part of the grist-mill," &c. This was the reserve which he says " I do reserve out of the said sales."

We think, therefore, that the fee of that half of the grist-mill and appurtenances did not pass to Gorton W. Nichols by the deed of May 16, 1833, but was retained in Jonathan Nichols, the father, until, by his deed of May 3, 1842, he conveyed it to the complainant. The fee of the whole of the mill lot is, therefore, in the complainant.

There remains, however, the further question raised by the parties in this cause, viz., can the complainant redeem that portion of the premises to which he has title, without paying. the whole amount of the incumbrances ?

It would seem, from the authorities cited in the argument of the cause, that, where several parcels of land are compre-

hended in the same mortgage, one of which parcels comes to A, another to B, that neither A nor B can redeem the parcel to which he alone has title, from the person holding the mortgage, at law, without paying the whole mortgage money, and that if A would discharge his estate from the lien, he must pay the whole mortgage; and whether he takes an assignment of the mortgage from the holder or not, he is treated at law, not as the mortgagee, but as having redeemed the whole estate, the parcel of B as well as his own. The mortgage is merged in the fee. ·

But because, in redeeming his own estate, A has been compelled to redeem the land of B also, and to advance his money for that purpose, equity will give him a lien on the estate of B, not for the whole amount of the mortgage money paid by A, but for so much only as he has been compelled to advance for B's benefit above the sum which, in equity, he should have paid to redeem his own. The position of the defendant, that the estate cannot be severed for the purpose of redeeming, is well supported by principle and authority, wherever the bill is brought against the mortgagee to redeem a mortgage subsisting at law, as contradistinguished from one subsisting in equity only, and for equitable purposes only. And in all such cases, therefore, we find that the person asking to redeem is compelled to redeem the whole estate, and, by that means, to reduce the legal mortgage to a mere equitable one, to discharge the *lien* at law from all the estate. It can make no difference in principle whether the owner in fee of a portion of the estate mortgaged shall have paid the whole mortgage upon his own title to redeem, and through the intervention of a court of equity, or the same thing has been done by the mutual agreement of the parties without such intervention. In the one case he has done the equity ordered by the Court, in the other he has done voluntarily what they would have decreed

he should do in order to redeem. He is not, therefore, in the situation of the second mortgagee in regard to the first. Nor is it now a question whether the estates shall be severed. They are already severed, and if the defendant did not originally consent to the severance, he has at least ratified it by the purchase of a part of the estate severed, and by redeeming the mortgage upon it. The defendant, then, stands, by his own voluntary choice, as the owner in fee of a portion only of the estate mortgaged, and as the purchaser of the mortgage upon it, thereby uniting, in his own person, both the equity of redemption and the mortgage, by means of which the mortgage became at law merged.

But because he has an interest in preserving the mortgage distinct from the equity, to the extent of the money advanced, for the redemption of the other portion of the estate, and to that extent alone, equity considers the mortgage as subsisting upon the other portion of the estate, for the purpose of compelling contribution from the owner; and, upon a bill filed for that purpose, would be entitled to a decree for such contribution against the owner of the other portion of the estate, and might have compelled the present plaintiff to redeem his estate from this equitable lien.

He has not, however, chosen to resort to a court of equity for this purpose, but seeks, by a suit at law, to take possession of the estate, as under a mortgage at law.

The plaintiff now proposes to do that which the defendant, by his bill, might have compelled him to do, viz., to contribute his portion of the money paid by the defendant in redeeming the estate in proportion to the value of the estate by him held, as compared with the whole, and asks that, upon those terms, he may redeem his estate from the equitable lien of the defendant.

Why should the defendant resist such claim? Why should

he not discharge the lien upon the plaintiff making that contribution for which alone the defendant has any claim upon the estate ?   Why should he be permitted to demand the whole mortgage money, when the plaintiff would, immediately upon payment, be entitled to demand back again all except what he now offers to pay.

If the same equity can be done by the bill alone as could be by another, it is certainly a mercy to the parties that it should be without the cost of another bill.

Whatever forms of proceeding the parties may go through, the several parcels of land owned by each must ultimately contribute toward the mortgage money in proportion to their respective values.   The bill is designed to effect that result, and it seems to us a proper bill for that purpose.

We are, therefore, of opinion, that the plaintiff is entitled to redeem the mill estate owned by him, as set forth in his bill from the equitable mortgage of the defendant, without paying the whole mortgage money, but upon contributing toward it such sum as in equity he ought, proportioned to the value of his estate compared with the whole, — that sum to be ascertained by a master.