**INDUSTRIAL TRADES UNION OF AMERICA**

v.

**WOONSOCKET DYEING CO., Inc.**

**Civ. A. No. 1649.**

United States District Court
D. Rhode Island.
Aug. 5, 1954.

---

2. Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 5, 149 A.L.R. 271.

Sidney S. Grant, Boston, Mass., Marshall B. Marcus, Providence, R. I., for plaintiff.

Charles F. Rogers, Woonsocket, R. I., for defendant.

DAY, District Judge.

This is an action under Section 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, wherein the plaintiff seeks an order requiring the defendant to submit to arbitration the question whether under its collective bargaining agreement with the plaintiff certain discharged boiler firemen are entitled to reinstatement to their jobs.

On February 1, 1950 the defendant, an employer engaged in business which affects interstate commerce, entered into a collective bargaining agreement with the plaintiff, a labor union. This agreement which has continued in full force and effect since its execution contains, among other provisions, certain provisions relating to seniority of employees, general working conditions, and grievance and arbitration procedures.

Prior to January, 1953 the defendant used hand operated, coal burning steam boilers to provide steam for its operations. These boilers required the constant attendance of three firemen whose duties were primarily to stoke said boilers and to bank the fires during slack periods. In January, 1953 the defendant discarded these boilers and in their stead installed modern automatic oil burning boilers. These automatic boilers required a maximum daily supervision of from two to three hours. As a result of this change the jobs formerly held by the three boiler firemen were abolished by the defendant. The defendant then created a new job, the duties of which were to operate the automatic boilers and to perform general maintenance work in and about its plant. This job was offered by the defendant to each of the three boiler firemen in the order of their respective seniorities and was rejected by each of them. Thereupon each was discharged.

Some time thereafter a criminal complaint, instigated by the plaintiff, was sworn out by the proper official of the City of Woonsocket against the defendant charging it with the violation of Section 3 of Chapter 1518 of the Public Laws of 1944 of Rhode Island, the provisions of which are as follows:

"Within the limits of the city of Woonsocket, from and after October 1, 1944, no person shall operate or be in direct charge of a stationary steam engine or stationary steam boiler of more than thirty horsepower * * * without obtaining a license as provided in this act. * * * No owner or user, or agent of an owner or user of any such

steam boiler or engine, shall permit it to be operated unless it is directly in charge of or operated by a duly licensed person as hereinafter provided in this act."

This criminal complaint which was issued by the District Court of the Twelfth Judicial District of the State of Rhode Island was subsequently nol prossed after a similar complaint against another employer, likewise instigated by the plaintiff, was tried and a finding of not guilty returned by the court.

On August 7, 1953 plaintiff forwarded to the defendant what it termed "individual demands for recall to work" signed by each of the three discharged firemen, accompanied by an official request by it in behalf of each. The defendant did not accede to these demands and later refused to comply with the demand of the plaintiff that its refusal to reinstate said firemen to their jobs be referred to arbitration in accordance with its agreement with defendant. Sometime later the plaintiff instituted this action.

In substance the plaintiff claims that the discharge of the three firemen under the foregoing circumstances was improper, that this contention amounts to a grievance within the terms of its agreement and that it constitutes an arbitrable question to be decided in accordance with the procedures for the settlement of disputes or grievances contained in said agreement.

The defendant on the other hand asserts that its replacement of its hand fired boilers by modern automatic boilers was made by it in the exercise of its right to modernize its equipment in order to improve its competitive position, reserved to it under the agreement. It further contends that the elimination of the jobs of the firemen whose services became unnecessary does not constitute a grievance under the agreement or give rise to an arbitrable question thereunder.

For the purpose of this case this Court will assume that where an arbitrable question under a collective bargaining agreement arises and either of the parties to the agreement declines to arbitrate, Section 301 of the Labor Management Relations Act of 1947 empowers this Court upon a proper showing to compel specific performance of arbitration clauses in such collective bargaining agreement. Textile Workers Union of America (C.I.O.) v. American Thread Co., D.C.Mass.1953, 113 F.Supp. 137; Local 207, United Electrical Radio & Machine Workers of America v. Landers, Frary & Clark, D.C.Conn.1954, 119 F. Supp. 877.

The first question then to be determined is—is there an arbitrable question between the parties in this case?

The determination of this question calls for a construction of certain provisions of their agreement. The pertinent provisions are the following:

"*Article G. General Working Conditions*

"Section 1. (a) The employer and the union recognize that the best interests of both employer and employee make necessary from time to time, changes in equipment, processes, or methods of production, in order to meet competition and to lead to better and more economical operation of the plant. The employer agrees that no such change will be made if it will result in an excessive work load for the employees.

\* \* \* \* \* \*

"(d) Disagreements over work loads or over changes in wage rates resulting from changes in equipment, processes, or methods of production or in work loads, shall be subject to arbitration according to the procedures established in this agreement.

\* \* \* \* \* \*

"*Article H. Adjustment of Grievances*

\* \* \* \* \* \*

"(c) Upon failure of the aforementioned parties (as described in "b" above) to settle the alleged complaint, grievance, or dispute after conferences thereon have been commenced following the presentation of

the written grievance, then and in that event and within forty-eight (48) hours after such failure to agree has occurred it shall be incumbant upon the parties to submit the issue to arbitration. * * * "

"*Article N. Discharges*

"Section 1. The employer shall have the right to suspend or discharge for just cause, but shall first notify the union representatives of the reasons for such discharge. Should the union charge that an employee has been unjustifiably suspended or discharged, the union shall have the right to request a review thereof by notice in writing submitted to the company within seventy-two (72) hours (exclusive of holidays, Saturdays and Sundays) after the suspension or the discharges. The union and the employer shall then endeavor to adjust the matter, and, if the same cannot be adjusted within one (1) week after the suspension or discharge, either the union or the employer shall have the right to request arbitration forthwith, but in no event, later than one (1) week after their failure to adjust the matter. * * *

"It is the intent of the parties that the employer shall give at least one (1) warning to any employee before taking discharge action except in cases involving a serious breach of discipline. Said warning shall be made known to a union representative."

In Pawtucket Mach. & Supply Corp. v. Monroe, 1947, 73 R.I. 162, at page 164, 54 A.2d 399, 400, the rule to be followed in determining the construction to be given to the foregoing provisions is well set forth in the following language:

"The cardinal rule in the construction of a written instrument is to read its language in connection with the relative position and general purpose of the parties and to gather from it, if one can, their intent as to the particular matter in dispute. In other words, in construing a written instrument the object sought is to ascertain and give effect, in so far as the rules of law will permit, to the intention of the parties. Sullivan v. Rhode Island Hospital Trust Co., 56 R.I. 253 [185 A. 148]; Co-operative Building Bank v. Hawkins, 30 R.I. 171, 181 [73 A. 617]; Tillinghast v. Fry, 1 R.I. 53, 57. The intention sought is only that expressed in the instrument and not some undisclosed intention that the parties may have had in mind."

Collective bargaining agreements like other contracts are to be given a reasonable construction, not one which results in injustice and absurdity. Weaver v. United States, 8 Cir., 1954, 210 F.2d 815.

To determine the intentions of the parties hereto Articles G and N must be considered together. It is clear that Article N was not intended to curtail or restrict the defendant's right, secured to it in Article G, "to make changes in equipment * * * in order to meet competition and to lead to better and more economical operation of the plant." The only limitation on this right was that "no such change will be made if it will result in an excessive work load for the employees." Article G, Section 1(a). Section 1(d) of said article then makes provision for the settlement by the arbitration procedure established in the agreement of any disputes over work loads or changes of wage rates occasioned by changes in equipment, processes or methods of production.

Clearly the parties by the provisions of Article N intended to prevent unjustified or discriminatory discharges and to preserve to the plaintiff the right to question the existence of justifiable cause for a discharge. And as a further safeguard against unjustifiable discharge this article requires the defendant to give at least one warning to an employee before his discharge, except in cases involving a serious breach of discipline and to give notice of such warning to a representative of the plaintiff. A dispute as to the

existence of justifiable cause for a discharge readily lends itself to adjustment under the grievance procedure provided in the agreement and in case of nonadjustment to arbitration in the manner therein provided.

It is clear to this Court that the parties hereto by their agreement have made provision for the eventual settlement by arbitration, if necessary, of disputes as to excessive work loads or changes in wage rates occasioned by changes in equipment and as to the existence of justifiable causes of discharges for disciplinary reasons.

In the present case no claim is made that the change in boilers was not made in good faith for, needless to say, none could be made. In installing the new boilers defendant was doing no more than it had a right to do under its agreement. The resultant elimination of the jobs of the three firemen whose services had become unnecessary cannot be said to be an extraordinary result not within the reasonable contemplation of the plaintiff and defendant when they executed their agreement. Such job eliminations are the normal and expected incidents of the modernization of industrial methods. There is a complete absence of evidence that the discharge of the three firemen was for any reason other than that their services were no longer needed.

This Court can find nothing in the agreement between the parties to justify the conclusion that their discharges under the circumstances here presented give rise to an arbitrable question thereunder. The fact that the plaintiff contends they were improper is not sufficient to create such a question. To so hold would be to adopt an unjust and unreasonable construction of the agreement between the parties, to read into it a provision it does not contain. It would have the effect of extending the arbitration procedure thereof into a field in which it was not intended to operate.

It is the considered judgment of this Court that there is no question existing between the parties which is arbitrable under their agreement, and that the plaintiff is not entitled to the relief it seeks. Judgment may be entered in favor of the defendant.