**GOODALL–SANFORD, Inc., Defendant, Appellant,**

v.

**UNITED TEXTILE WORKERS OF AMERICA, AFL, LOCAL 1802 et al., Plaintiffs, Appellees.**

No. 5029.

United States Court of Appeals First Circuit.

Heard Nov. 3, 1955.

Decided April 25, 1956.

William B. Mahoney, Portland, Me., with whom Daniel T. Drummond, Jr., Douglas M. Orr, and Drummond & Drummond, Portland, Me., were on the brief, for appellant.

Sidney W. Wernick, Portland, Me., with whom Berman, Berman & Wernick, Portland, Me., was on the brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This case is the third one decided today on problems relating to the power of a federal district court to compel arbitration in accordance with a collective bargaining agreement. However, the instant case reached this court in a posture different from that of the other two; and it involves additional considerations not present in Local 205, United Electrical, etc., Workers v. General Electric Co., 1 Cir., 233 F.2d 85, or Newspaper Guild of Boston v. Boston Herald-Traveler Corp., 1 Cir., 233 F.2d 102.

Plaintiffs herein, a local labor organization and its parent national union, represented employees of defendant Company at plants in Sanford and Springvale, Maine, in an industry affecting commerce. The last collective bargaining agreement between the parties, as renewed in June, 1954, provided that it was to "continue in full force and effect" until July 15, 1955. The past tense is used advisedly, for defendant, because of continued heavy losses, commenced to terminate all operations at its Sanford and Springvale mills and inaugurated a program of liquidation during the second half of 1954. Production was limited to "running out" products in process, at the completion of which the several mills were shut down completely. By April, 1955, all production operations had ended and all of the real estate and buildings had been sold; the corporation was to go out of existence after liquidating completely.

On December 29, 1954, and February 18, 1955, certain groups of employees (totaling approximately 1400) were notified that their respective employment with the Company was being terminated as of those dates and that their names were being removed from the payroll records. Although the workers were already on lay-off status, those actions were significant with respect to various "fringe benefits" provided in the collective bargaining agreement, including group life, medical, and hospitalization insurance, pensions, and vacation pay. The Union protested each of these notifications, achieving a month's delay as to the first group of terminations, and subsequently it requested arbitration of the entire problem in accordance with the contract, which will be described in some detail later in this opinion. The Company declined to arbitrate, deeming the terminations not an arbitrable matter under the contract. On March 15, 1955, the Union filed its complaint in the present action, invoking § 301 of the Taft-Hartley Act, 61 Stat. 156, 29 U.S.C.A. § 185, as the basis for jurisdiction, and praying for an order to compel arbitration and for interlocutory injunctive relief. A restraining order and a preliminary injunction were granted, D.C., 129 F.Supp. 859, which forbade the termination, but on May 20, 1955, Judge Clifford dissolved the preliminary injunction. No questions touching upon the granting or dissolving of the injunction are presented on this appeal. In an opinion and order of June 1, 1955, D.C., 131 F.Supp. 767, the district court granted the Union's motion for summary judgment on its prayer for specific performance of the arbitration provision, and subsequently entered a decree which will be described later. The Company appeals from that decree.

### I.

At the outset we must note a question as to whether the order and decree of the district court are appealable. The decree recites, as did the arbitration provision of the contract, that the decision of the arbitrator "shall be final and binding" on the parties. Thus it seems that the court did not intend to reserve jurisdiction to confirm the arbitrator's decision. Perhaps it could not have done so with respect to this contract calling for a "final and binding" award, since the Arbitration Act, 9 U.S.C. § 9, seems to authorize confirmation of an award by summary proceedings in the district court only when the contract includes an express stipulation for entry of judgment upon the award. See Hyman v. Pottberg's Ex'rs, 2 Cir., 1939, 101 F.2d 262, 266; Lehigh Structural Steel Co. v. Rust Engineering Co., 1932, 61

App.D.C. 224, 59 F.2d 1038; S.Rep.No. 536, 68th Cong., 1st Sess. 4 (1924). It must be recognized, however, that even without a reservation of jurisdiction to confirm the eventual award, a decree ordering parties to arbitrate obviously does not purport to adjudicate the merits of the controversy or finally terminate it. And where arbitration is sought through the related procedure for stay of a pending action pursuant to § 3 of the Arbitration Act, an appeal prior to the arbitration is only available, under 28 U.S.C. § 1292(1), whether the stay is granted or denied, if the pending action was "legal" rather than "equitable" in character. Baltimore Contractors, Inc. v. Bodinger, 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233. The appeal at that stage may be unavailable under the test of the Baltimore Contractors case even where a request for an affirmative order compelling the other party to arbitrate was joined with the request for a stay. Wilson Bros. v. Textile Workers Union, 2 Cir., 1955, 224 F.2d 176; Turkish State Railways Administration v. Vulcan Iron Works, 3 Cir., 1956, 230 F.2d 108; cf. Schoenamsgruber v. Hamburg American Line, 1935, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989, (§ 8). Chief Judge Clark has suggested that where an order to compel arbitration is granted in an independent proceeding under § 4, the appeal likewise should be denied, not only to make availability of appeal more consistent with the practice under other sections of the Arbitration Act, but also because an appeal prior to the arbitration may be "disruptive and delaying." See Stathatos v. Arnold Bernstein S. S. Corp., 2 Cir., 1953, 202 F.2d 525, 527. There is much force to this view, although we doubt that a completely consistent pattern of appeal could be achieved in view of the variant situations illustrated by the cases already cited. At any rate, we are more persuaded by some of the older precedents, which viewed a § 4 proceeding as completed upon the granting of the only relief sought, an order of the court compelling arbitration, and thus held that order to be "final"

in the sense of 28 U.S.C. § 1291. Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc., 2 Cir., 1933, 62 F.2d 1004; Continental Grain Co. v. Dant & Russell, Inc., 9 Cir., 1941, 118 F.2d 967. This holding, which we adopt here, contributes consistency at least to the extent that appeal is equally available whether the court grants or denies an order to arbitrate, for dismissal of a § 4 petition on the merits is clearly a final judgment.

## II.

The district court did not proceed under the Arbitration Act, 9 U.S.C. § 1 et seq., in this case, but found its authority to compel arbitration in § 301, relying upon some of the decisions discussed in our opinion today in Local 205, United Electrical, etc., v. General Electric Co., 1 Cir., 233 F.2d 85. For the reasons stated in the latter opinion, we do not accept this approach. But our holding in the General Electric case applies here; if the terms of the Arbitration Act are satisfied, the decision to compel arbitration was within the power of the district court.

It would be merely dilatory at this stage to remand this case for amendment of pleadings to allege compliance and defenses under the Arbitration Act. In the other two cases decided today, wherein the district court had denied an order to arbitrate, remand for a decision on the merits was necessary, and so affording an opportunity to amend was appropriate. Here the district court has ruled on the merits, and we may proceed to review that decision, after determining from the record that the case substantially complies with the requisites of the Arbitration Act.

The arbitration clause at issue comes within the scope of § 2 of that Act. Article VIII of the contract provides that

"any dispute which relates solely to the meaning and application of this Agreement or any individual grievance may be referred to arbitration by written notice by either party to

the other. \* \* \* Arbitration shall be in accordance with the following procedure: \* \* \*

"2. The Arbitrator shall have no power to add to or to subtract from the terms of this Agreement. \* \* \*"

The four-step grievance procedure that precedes arbitration in Art. VIII was not carried out here, although conferences somewhat equivalent to step 4 took place. At any rate, the Company may be taken to have waived compliance with that procedure by its failure to allege that ground in resisting arbitration in the court below. The proceedings in that court in substance were equivalent to the procedure of § 4 of the Act. There was no issue over "the making of the agreement for arbitration or the failure to comply therewith", other than the question of arbitrability of the dispute. This the court determined upon motion for summary judgment. Since there was no controverted issue of material fact and the question of arbitrability turned only upon interpretation of the written contract, summary judgment was an appropriate vehicle for the decision, not inconsistent with the provision of § 4 for trial to a jury or the court of controverted issues regarding the making or breach of the agreement to arbitrate. See also part IV of our opinion in the General Electric case.

■ The decree ordered the parties to agree upon a person to serve as arbitrator but provided for selection of an arbitrator by the court if the parties failed to agree upon one within ten days. The order to select an arbitrator was consistent with Art. VIII of the contract, and the power of the court to make the appointment in the event the parties failed to do so is expressly conferred by § 5 of the Arbitration Act. The decree also provided, as already noted, that the award was to be "final and binding," and it framed the questions to be submitted to arbitration as follows:

"a. Did Goodall-Sanford, Inc. violate the collective bargaining agreement \* \* \* [by taking the action described at the beginning of our opinion] \* \* \*;

"b. If a violation of contract was committed by Goodall-Sanford, Inc. what must be done by Goodall-Sanford, Inc. appropriately and fully to remedy the said wrong to the employees affected, in accordance with the terms and provisions of the entire collective bargaining agreement."

This formulation of the issues in dispute is accurate and serves to limit the arbitrator to the matters deemed arbitrable by the court, a limitation of which defendant cannot complain. Defendant has argued here that the second question, taken with the provision for finality, is somehow improper. We do not understand this. Arbitrators conventionally award appropriate relief, upon finding a breach of contract; there would be little point to arbitration otherwise, and the parties must have understood that in placing an arbitration clause in their collective bargaining agreement. The contract itself provides for finality of an award, so that provision of the decree has no particular effect. Of course, despite "finality" an award is subject to some degree of judicial review through 9 U.S.C. §§ 10–11 or other appropriate proceedings. See Hyman v. Pottberg's Ex'rs, supra, 101 F.2d at page 266.

In summation, we find no jurisdictional or procedural error in the action of the district court, nor any substantial deviation from the procedure that would have been followed under the Arbitration Act. Accordingly, we turn to the merits of the decision below.

### III.

The "merits" of a suit to compel arbitration, of course, do not include the ultimate issues of contract interpretation that determine the outcome of the controversy. Those are what the arbitrator

will decide. What we must pass on here is only the district court's determination that the controversy is arbitrable. The court held "that the dispute relates to the 'meaning and application' of the agreement and that the contentions of the parties in this respect are not frivolous but are fairly and justly maintained and advanced." 131 F.Supp. at page 771. It will be helpful now to set forth the relevant provisions of the contract. The arbitration paragraph itself was quoted in the last part of this opinion and so will not be repeated. It will also be recalled that the collective bargaining agreement had been extended in June, 1954, to "continue in full force and effect" until July 15, 1955.

Article VII, entitled "Termination of Employment," stated as follows:

"A. Reasons for Termination: An employee's continuous service and his employment with the Company shall be terminated by:

"1. Voluntary Quit.

"2. Discharge for cause.

"3. Absence from work for a period of eighteen (18) months or more for any reasons other than to fill a Union position to which the employee was elected or appointed or where an entire operation has been discontinued."

Eligibility to be paid for the annual summer vacation was given in Art. V in these terms:

"B. Eligibility Requirements: During the term of this agreement an employee on the payroll of the Company on June 1st of the vacation year and who has worked at least 900 hours in the twelve-month period from June 1 of the preceding year to May 31 of the vacation year (both dates included) shall be eligible for vacation with pay * * *."

Subsequent paragraphs provided for the computation of the amount of "vacation pay" on the basis of the average hourly earnings of employees in the last week or month preceding June 1 in which they worked, and for payment of a "vacation bonus," a percentage of wages for the year ending June 1, to employees who had been "in the continuous employment of the Company" for certain periods but who did not qualify for vacation pay under the foregoing provisions.

It will be seen that eligibility for vacation pay or vacation bonus was tied to existence of the employment status on a given date, June 1, regardless of whether the employee had worked continuously throughout the preceding year or was working on the date in question, with vacation pay as such limited to those who had worked at least 900 hours during the year (approximately 23 weeks on the normal workweek of Art. III). The district court found that eligibility for the other benefits described in the complaint—life, health, and accident insurance and pensions—also was related to the employment status, with partial benefits continuing during a lay-off but not if the employment was terminated. See 129 F. Supp. at pages 864–865. The preliminary injunction granted by the district court in that opinion seems to have afforded the principal relief pertinent to those benefits, and it appears that the vacation pay-vacation bonus issue is the major, if not sole, matter in the case at this time. The injunction was lifted on May 20, 1955, and counsel informed us at the argument that the Company carried out the termination of the employment of the persons involved before June 1. The Union's contentions are that this action (delayed since February by the injunction) violated the provisions of Art. VII as to how employment may be terminated, and that those provisions are exclusive. The Company argues to the contrary.

In addition, both the Union and the Company may find support in other articles of the contract, such as these:

"Article I

"D. Rights of Management: The management of the Company's business, including * * * the direction of its working force and the

right to hire, lay-off and suspend employees is vested exclusively in the Company, subject to the provisions of this agreement."

"Article XIII
" * * * this Contract contains all matters on which the parties are mutually agreed. If at any time while this agreement is in effect the parties desire to modify, amend, or add to it in any respect either retroactively or prospectively they may do so by mutual assent. * * * "

"Article XVI
"The parties acknowledge that during the negotiations which resulted in this agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this agreement. Therefore, the Company and the Union, for the life of this agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this agreement, or with respect to any subject or matter not specifically referred to or covered in this agreement, even though such subjects or matter may not have been within the knowledge or contemplation of either or both parties at the time that they negotiated or signed this agreement."

It is not our function here to determine whether a reconciliation of all these contract provisions will support or refute the Union's contentions. We believe that the provisions set forth at length above do indicate, as the district court held, that the facts of this case involve a "dispute which relates solely to the meaning and application" of the contract, in the words of the arbitration clause, and that the contentions of the party seeking arbitration thereunder are not frivolous or baseless.

However, defendant argues that well-settled law entitles an employer to shut down an unprofitable business and terminate the employment of its employees, so that the termination of employment under those circumstances cannot create an arbitrable issue under a collective bargaining agreement. The point is well stated in defendant's brief in these words:

"A collective bargaining agreement is a living thing to govern the relationship of the parties during the life of the agreement while the business is being operated as a going business. It certainly does not bind the employer to carry on an unprofitable business. The decision to completely and finally discontinue an unprofitable business is a function of management and the collective bargaining agreement was not designed to limit that function."

It may be that existence of a collective agreement with a union for a fixed term does not affect the common law status of the individual employments as contracts terminable at will, except in so far as the union contract expressly limits the employer's power to terminate. See United States Steel Corp. v. Nichols, 6 Cir., 1956, 229 F.2d 396; 1 Teller, Labor Disputes and Collective Bargaining § 169 (1940). And it may also be that, as a result, the act of terminating employment because a department or an entire business is closed cannot be prevented, or made the basis for liability to a lawsuit or to arbitration under a "discharge for cause" provision of a union contract. See Local Union No. 600, etc., v. Ford Motor Co., D.C.E.D.Mich.1953, 113 F.Supp. 834; Machine Printers Beneficial Ass'n, etc., v. Merrill Textile Print Works, Inc., 1951, 12 N.J.Super. 26, 78 A.2d 834; Industrial Trades Union, etc.,

v. Woonsocket Dyeing Co., Inc., D.C.D. R.I.1954, 122 F.Supp. 872. We do not have to make a decision on either of those propositions, for the situation before us is distinguishable.

It cannot be doubted that a collective bargaining agreement could be drawn to cover the problems arising in the eventuality of an employer's going out of business. For example, see the collective bargaining agreement dealt with in Byerly v. Duke Power Co., 4 Cir., 1954, 217 F.2d 803. Even without an express reference to that possibility in the contract, in view of the increasingly complex use of compensation in the form of "fringe benefits," some types of which inherently are not payable until a time subsequent to the work which earned the benefits, we believe that there may be terms within a union-employer contract whose effect is not necessarily limited to the continuance of the living relationship that exists while the business is being operated as a going concern. See Matter of Potoker, 1st Dept.1955, 286 App.Div. 733, 146 N.Y.S.2d 616. Here the eligibility for vacation pay was stated in Art. V to be dependent on existence of the employment relationship on a given date, prior to the end of the contract term. The parties must have contemplated that on this date particular employees might have been away from work for a considerable time subsequent to completion of the minimum 900 hours of work whereby they had earned the vacation pay. Without deciding whether this contract term does have continued effect in the circumstance of the employer's good faith decision to terminate all operations prior to June 1, 1955, we hold that the question thus posed is an arbitrable one under this contract on the facts of this case. Cf. Wilson Bros. v. Textile Workers Union, D.C.S.D.N.Y.1954, 132 F.Supp. 163, appeal dismissed 2 Cir., 1955, 224 F.2d 176; Matter of Potoker, supra.

The decree of the District Court is affirmed.