STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-11-358/
J AW - c u M - 3/23/2012

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 23 2012

RECEIVED

TEAMSTERS UNION LOCAL 340

Plaintiff,

v.

CITY OF AUGUSTA

Defendant,

ORDER

Before the court is the plaintiff's motion to compel arbitration and the defendant's motion to dismiss.

## BACKGROUND

The Teamsters Union Local 340 ("Plaintiff" or "Union") filed a complaint and motion to compel arbitration on August 15, 2011. The subject of the complaint and motion are two Collective Bargaining Agreements ("CBA") in effect from July 1, 2010 to June 30, 2013, between the Union and the City of Augusta ("Defendant" or "City") for the "Civic Center Operations Employees" and "General Government Employees," established pursuant to the Municipal Employees Labor Relations Act, 26 M.R.S. §§ 961- 974 (2010). The Union is the exclusive bargaining agent representing employees in the Augusta Civic Center and General Government bargaining units.

Under Article 12 of the Civic Center CBA, the City agreed to pay a percentage of vision and dental health insurance benefits for employees and also agreed that for retirees "[h]ealth insurance shall be the same coverage as provided for full-time employees until the retirees reach the age of 65...." The

1

City now refuses to pay a percentage of the vision and dental insurance of retirees of the Civic Center and General Government.

The CBAs include a grievance procedure in Article 9.[1] Article 9, section 2(a) defines "employee" as "any person covered by this agreement as provided for under Article I [sic] - Recognition."[2] The Recognition section states that the CBA covers "all [the Union's] eligible employees with the General Government bargaining unit [and] the regular full-time and regular part-time employees of the Augusta City Center...." Step One of the grievance procedure states that "[a]n employee(s) who claims to have a grievance shall present this grievance ...." After Step One, the CBA uses the term "aggrieved party" rather than "employee" but does not define "aggrieved party." Step Four of the grievance procedure allows an "aggrieved party" to appeal an unsatisfactory decision at Step Three to an arbitrator provided that certain notice and other procedural requirements are met.

The Union, following the above procedure, filed grievances on behalf of the retirees being denied insurance benefits but the City refused to hear the grievances and claimed that the Union lacked standing to bring the claim because the retirees are not "employees" within the meaning of Article 9 (Grievance Procedure) and Article 2 (Recognition). The Union then sought to arbitrate the dispute, pursuant to 26 M.R.S. § 937, but the City refused to arbitrate. The Union then commenced this action seeking an order from the court to compel the City to arbitrate. The City filed an opposition to the motion to compel arbitration combined with a motion to dismiss on the grounds that the

---

[1] This is Article 10 in the General Government CBA.
[2] The CBA references Article I as the Recognition section but the Recognition section is actually labeled Article 2.

2

arbitration agreement does not cover retirees and that any arbitrator would lack jurisdiction to make an award.

## DISCUSSION

Given that the motion to compel arbitration seeks identical relief to the complaint, the motion to dismiss is superfluous. If the court determines that the motion to compel should be granted then the motion to dismiss fails as a matter of law and, if the court determines that the motion to compel is denied, no further relief is sought under the complaint and the case is at an end.

Under 26 M.R.S. § 951 (2010), a written provision in any collective bargaining contract to settle a controversy arising therefrom through arbitration is "valid, irrevocable and enforceable, save upon such grounds, independent of the provisions for arbitration…for the revocation of any contract." *See also* 14 M.R.S. § 5927 (2010) (Maine Uniform Arbitration Act). Where one party fails to submit a controversy to arbitration as agreed, the aggrieved party may institute proceedings in the Superior Court seeking an order that arbitration proceed. 26 M.R.S. § 953. If the making of the collective bargaining agreement or the agreement to arbitrate is at issue, the court must proceed summarily to trial of the issue. *Id.; see also* 14 M.R.S. § 5928.

Whether a dispute is subject to arbitration depends upon a fair construction of the terms and scope of the collective bargaining agreement. *United Textile Workers v. Goodall-Sanford, Inc.*, 131 F. Supp. 767, 771 (D. Me. 1955). The court may use the accepted rules of contract interpretation to determine the intent of the parties. *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 207 (Me. 1979). That is, the interpretation of an unambiguous contract must be limited to the plain meaning of the language used within the four corners of

3

the instrument. *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983).

> However, the Maine legislature's strong policy favoring arbitration dictates a conclusion that the dispute has been subjected to arbitration if the parties have generally agreed to arbitrate disputes and if the party seeking arbitration is making a claim which, *on its face*, is governed by the collective bargaining contract. By an alternative formulation it has been held that a court will find a dispute arbitrable unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* (citations and quotations omitted). *See also United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

In *Allied Chemical & Alkali Workers of Am. Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971), the Supreme Court held that retirees are not employees and that retirees could not be part of the same bargaining unit because their interests were no longer sufficiently aligned with active employees. *Id.* at 172-73. In that case the union claimed that the employer had violated the collective bargaining agreement by contacting the retirees directly seeking to alter retiree benefits. The court determined that the employer did not engage in unfair labor practices by not bargaining with the union over the retiree benefits because those benefits were not a mandatory subject of bargaining.

The Plaintiff argues that *Allied Chemical* is distinguishable from this case because this is a "purely contractual claim" over whether the City did agree to provide retiree vision and dental benefits. The Plaintiff cites several cases standing for the proposition that unions have an interest in seeking the enforcement of collective bargaining agreements. *See United Steelworkers v. Canron*, 580 F.2d 77, 80-81 (3d Cir. 1978); *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1977); *United Food & Commercial Workers Int'l Union, ALF-CIO v. Alpha Beta Co.*,

4

736 F.2d 1371 (9th Cir. 1984). The Plaintiff also cites to *Anderson v. Alpha Portland Industries Inc.*, 752 F.2d 1293, 1296 (8th Cir. 1985), to state that when a union chooses to represent retirees, an employer may not refuse to arbitrate its contractual obligations with the union. However, the cases that the Plaintiff cites do not suggest that a union has the right to compel arbitration on a component of a collective bargaining agreement to which the other party did not agree to arbitrate. The fact that the retirees have agreed to be represented by the union to pursue a breach of a contractual obligation does not create a right to compel arbitration if that was not part of the agreement.

In this case, the CBA grievance procedure clearly defines the term "employee" to be those recognized in Article 2. The language of Article 2 is clear that only active employees are part of the bargaining unit. The distinction between full-time and part-time employees further suggests that retirees are not included within this definition. However, the grievance procedure in Article 9 does not specifically limit the process to "employees." It uses the term "grievant," "employee," and "aggrieved party." On the other hand, a reading of the procedure itself reveals that it was likely not intended to govern grievances by retirees. For example, Step One states: "An employee(s) who claims to have a grievance shall present this grievance to the immediate Supervisor in writing...." First, a retiree does not fit within the definition of "employee" and, second, a retiree does not have an immediate supervisor. The remaining steps, culminating with the right to arbitration, are all predicated upon the "aggrieved party" being dissatisfied with the outcome of the prior step. If Step One cannot apply to a retiree, then none of the subsequent steps can apply to a retiree.

5

The City does not appear to contest that retiree benefits were bargained-for. Instead, the City simply argues that the arbitration agreement does not cover any matters involving retirees. Although the claim that the Union is making appears to be governed by the CBA and that the parties have generally agreed to arbitrate disputes arising from the CBA, the grievance procedure culminating in arbitration by its plain language does not compel the City to proceed to arbitration for a grievance of a retiree. Even with the retirees' permission to act on their behalf, the Union cannot compel the City to arbitrate an issue that was not agreed upon to be subject to arbitration.

**The entry is:**

The Plaintiff's Motion to Compel Arbitration is DENIED and the case is at an end.

DATE: March 23, 2012

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Howard Reben Esq

Defendant-Stephen Lansdorf Esq
Adam Shub Esq

6