18 N.J. Super. 421 (1952)
87 A.2d 458
TEXTILE WORKERS UNION OF AMERICA AND GEORGE EARDLEY, PLAINTIFFS,
v.
PARIS FABRIC MILLS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Passaic County Court.
Decided March 11, 1952.
*422 Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys for plaintiffs.
Messrs. Shavick, Rittenberg & Shavick, attorneys for defendant.
DAVIDSON, J.S.C.
This action, brought to recover for employees' vacation pay allegedly due under the terms of a labor agreement, is submitted to the court on an agreed statement of facts. From said statement it appears that on May 1, 1950, the plaintiff union, as exclusive collective bargaining agent for all employees, entered into a written agreement with defendant, section XIX setting forth that the contract would be in full force and effect up to and including April 30, 1951, and specifically providing for automatic renewal for an additional year and from year to year thereafter, unless terminated in writing by either party 60 days prior to the expiration date.
Plaintiff, on February 28, 1951, gave defendant the required 60-day notice of its intention to terminate the agreement at its expiration on April 30, 1951, and on said date defendant's employees, in accordance with plaintiff's call, went out on strike. While the strike was still in progress, defendant, after notification to plaintiff, on June 4, 1951, started to remove its operations from the State, and no further contract was entered into, nor did the striking employees of defendant ever return to work.
The striking employees now claim vacation pay under the terms of the agreement which they, through their bargaining agent, terminated on April 30, 1951, and have assigned their individual claims to plaintiff Eardley for prosecution.
*423 Section XXVIII of the agreement provides for vacation pay for employees, graduated according to length of service as of June 1 of each year. Paragraph (P) provides that all vacations shall be granted between June 15 and September 15 of a given year, and paragraph (Q) stipulates that: "The continuous service record of an employee shall be broken only by quitting, including refusal to return to work on recall, or justifiable discharge," and "If such quit or discharge takes place before June first, the employee shall receive no vacation pay."
Paragraph (R) contains a further provision that vacation pay shall become immediately payable to the employee or his heirs as if the event had occurred on June 1 next following upon the death of the employee, or bankruptcy, permanent cessation of plant operations, sale or removal of the business from the jurisdiction of Local 75.
In this situation defendant maintains that no employment contract was in force on June 1, 1951, the same having been terminated at its expiration on April 30, 1951, at the option of plaintiff as bargaining agent for the employees, and further, that by reason of the strike on April 30, 1951, and the non-return to work before the removal of defendant's plant operations on June 4, 1951, the strikers were not employees of defendant on June 1, 1951, and therefore not entitled to vacation pay.
It is beyond dispute that an agreement to pay vacation pay to employees made to them before they performed their services, and based upon length of service and time worked, is not a gratuity, but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation. In re Wil-Low Cafeterias, Inc., 111 F.2d 429 (C.C.A. 2 1940); Division of Labor Law Enforcement v. Ryan Aeronautical Co., 236 Pac.2d 236 (Cal. Super. Ct., App. Dept. 1951); Hercules Powder Co. v. Brookfield, 189 Va. 531, 53 S.E.2d 804 (Va. Sup. Ct. App. 1949).
*424 The only substantial question for determination is whether plaintiffs' assignors were, under the contract, employees of defendant on June 1, 1951, and so entitled to vacation pay, or did the expiration of the contract on April 30, 1951, and the consequent strike constitute a quitting which would break the continuous service record and bar vacation pay under paragraph "Q" of the contract. Briefly, were those on strike, employees within the terms of the contract on June 1, 1951?
A strike is not a quitting or abandonment of employment and does not terminate the relationship between the parties. Keith Theatre, Inc., v. Vachon, 134 Me. 392, 187 A. 692 (Sup. Jud. Ct. Me. 1936); Michaelson v. United States, 291 F. 940 (C.C.A. 7 1923); Tri-City Central Trades Council v. American Steel Foundries, 238 F. 728 (C.C.A. 7 1916); Jeffery-De Witt Insulator Co. v. N.L.R.B., 91 F.2d 134 (C.C.A. 4 1937); American Federation of Hosiery Workers v. Pohatcong Hosiery Mills, 13 N.J. Super. 268 (App. Div. 1951).
That the parties themselves considered vacation pay as additional wages or compensation is evidenced by the contract provision that the continuous service record of an employee should be broken only by quitting or justifiable discharge before June 1, and the further provision that vacation pay is immediately payable to the employee or his heirs prior to that date in the event of the death of the employee, or bankruptcy, permanent cessation of plant operations, sale, or removal of the business from the jurisdiction of the union on the part of the employer.
My determination is that compensation in the form of vacation pay is payable for work performed prior to April 30, 1951, the date of the expiration of the agreement, the agreement itself deferring and fixing the time for such payment subsequent to its own expiration. Judgment, accordingly, may be entered in favor of plaintiffs and against defendant in conformity with the amounts set forth in the agreed statement of facts.