In the Matter of the Arbitration between M. MICHAEL POTOKER, as Secretary-Treasurer of Newspaper Guild of New York, Local 3, ANG, CIO, Appellant-Respondent, and BROOKLYN EAGLE, INC., Respondent-Appellant.

First Department, December 13, 1955.

*Herman E. Cooper* of counsel (*H. Howard Ostrin, Lippman Bodoff* and *Eugene N. Sosnoff* with him on the brief; *Cooper, Ostrin & De Varco,* attorneys), for appellant-respondent.

*David L. Benetar* of counsel (*Oscar A. Lewis, H. H. Nordlinger, Robert C. Isaacs, Julius L. Rassner* and *A. F. Schaeffner* with him on the brief; *Nordlinger, Riegelman, Benetar & Charney,* attorneys), for respondent-appellant.

Cox, J.   Newspaper Guild of New York, Local 3, ANG, CIO (hereinafter referred to as " Guild ") moved to compel arbitration of controversies it claimed existed under a collective

bargaining agreement with Brooklyn Eagle, Inc. (hereinafter referred to as " Employer "), dated November 30, 1952, affecting Employer's editorial and commercial department employees. The learned Special Term Justice has held that (1) the commencement of a strike by the Guild constituted a repudiation by the employees of the continued existence of the contract; (2) all claims based on acts or omissions arising subsequent to termination of the contract are not arbitrable under the contract and, accordingly, (3) the claims for severance and notice of dismissal pay may not be arbitrated, while claims for overtime, holiday and accrued vacation pay should be submitted to arbitration. Each party appeals from so much of the order entered as is adverse to it, though the Employer has since abandoned so much of the appeal as relates to holiday and overtime pay and argues for a reversal only in respect of vacation pay.

The agreement between the parties stipulates a two-year term ending November 29, 1954, and provides that within the period of sixty to ninety days prior to the fixed terminal date, either party may give notice of a desire to change the terms of the contract, in which event the parties were to promptly open and carry on with due diligence negotiations until terminated by either party and meanwhile maintain the *status quo*; and that " any dispute, claim, grievance or difference arising out of or relating to this agreement shall be arbitrated."

On September 1, 1954, the Guild gave notice of its desire to modify the contract " Pursuant to the provisions of the Labor-Management Relations Act, 1947." The parties thereafter negotiated but failed to reach any agreement. On January 28, 1955, the Guild called a strike and the employees quit work. Up to that time the *status quo* had been maintained. Negotiations continued until March 8, 1955, when they terminated. On March 16, 1955, the Employer by letter addressed to the Guild formally terminated the negotiations and informed the Guild that it would never resume publication of the *Brooklyn Eagle*. On the same day, the Guild demanded severance, accrued vacation, unpaid overtime, holiday, notice of dismissal and sick leave pay and any other moneys due to the employees. Ten days later, the Guild served a demand for arbitration on those issues which the Employer rejected on the ground that no contract for arbitration existed.

The Employer claims that the Guild breached and terminated the contract (1) by calling a strike on January 28, 1955, thereby violating the *status quo* provisions of the contract, and (2) by terminating negotiations on March 8, 1955, in that it refused

to meet with the Employer in joint session, as a consequence of which there was no agreement for arbitration in existence. The Guild contends that the Employer terminated the negotiations and in effect discharged all employees on March 16, 1955, when it wrote to the Guild that because of the Guild's strike and refusal to meet in joint session with the Employer on March 8th an " insoluble impasse " had been reached and stated further " We agree that further negotiations will be futile, and we elect to, and hereby do, terminate them forthwith " and " we do not intend ever to resume publication of the newspaper."

The issues on this appeal are, therefore, limited to the propriety of the refusal to direct arbitration of the claims for vacations, severance and notice of dismissal pay.

The agreement of the parties expressly provides for overtime, vacation, holiday, severance, and notice of dismissal pay. Claims referable to such provisions certainly " arise out of or relate to " the contract, which specifically prescribes arbitration as the method for determination of all disputes. (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Teschner* [*Livingston*], 285 App. Div. 435.)

The arbitration clause of the contract is phrased in the broadest and most comprehensive language, embracing " any dispute, claim, grievance or difference arising out of, or relating to," the agreement. The intention of the parties, manifest therein, to dispose of all of their disputes by arbitration should be enforced. (*Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.*, 305 N. Y. 36.)

Whether the contract has been terminated by acts of the employer or of the Guild is in dispute, and is, therefore, an issue determinable by the arbitrators. " Before compelling arbitration it was not necessary for the court to determine that the contract was either performed by one party or breached by the other." (*Matter of Lipman* [*Haeuser Shellac Co.*], *supra*, p. 80.) The mere circumstance, however, that a contract has been terminated does not foreclose the arbitration of issues which arise out of and relate to it. (*Matter of Lane* [*Endicott Johnson Corp.*], 274 App. Div. 833, affd. 299 N. Y. 725.)

The fact that the Guild's right to arbitrate overtime and holiday pay claims is no longer contested would, perhaps, indicate that the continued operating existence of the contract is not a prerequisite to the enforcement of arbitration of issues arising under said contract. Of course, that concession, in and of itself does not necessarily imply that the issue of severance pay is arbitrable.

However, the Guild contends that severance pay as contemplated in the contract was earned and accrued contemporaneously with the rendition of services over the years during which the contract provision for severance pay was operative and that the time for payment of such benefits was deferred; consequently, it contends that this issue survives the termination of the contract. The argument thus advanced is a tenable one and the pattern and course of the parties' conduct might be influential in determining the issue. If the Guild can sustain its contention in this regard, the accrued benefits under the severance pay provisions do not perish with the agreement, survive its termination, and severance pay becomes payable on expiration of employment regardless of the date of termination of the contract.

Any inquiry, however, to determine whether or not such claim, or any claim, arises after the termination of the contract goes to the merits. It is a matter embraced within the general principle, to which reference is made in *Matter of Lipman* (*Haeuser Shellac Co.*) (289 N. Y. 76, 80, *supra*), that " all issues subsequent to the making of the contract are not for the court but for the arbitrators ", and is therefore properly within their province.

The Guild here applied for an order directing that such claims be heard and determined by arbitrators. On such application, the court could not decide whether or not any such claim was valid. It was limited to a determination as to whether or not (1) a contract requiring arbitration exists between the parties; (2) a dispute exists within the scope of the arbitration clause; and (3) one party to the dispute refuses to proceed to arbitration. (*Matter of Spectrum Fabrics Corp.* [*Main St. Fashions*], 285 App. Div. 710, affd. 309 N. Y. 709; *Matter of Lane* [*Endicott Johnson Corp.*], 274 App. Div. 833, affd. 299 N. Y. 725, *supra*; *Matter of Teschner* [*Livingston*], 285 App. Div. 435, *supra*; *Matter of Crosett* [*Mt. Vernon Housing Auth.*], 275 App. Div. 1051; *Matter of Lipman* [*Haeuser Shellac Co.*], *supra*.)

Even if the Guild violated the contract by calling a strike, that does not prevent it from invoking the arbitration called for in the contract (*Matter of Stewart Stamping Corp.* [*Uprichard*], 285 App. Div. 953), and it is quite immaterial to a determination as to whether or not it is required that a specific claim be arbitrated that the provision for arbitration is found in a contract which has been terminated (*Matter of Lane* [*Endicott Johnson Corp.*], *supra*; *Matter of Selly* [*French Tel. Cable Co.*], 178 Misc. 1076; *Matter of Commercial Telegraphers' Union*, 123

N. Y. S. 2d 259). Whether the employer has incurred any liability for severance pay is to be determined by the arbitrators who are the judges of the law as well as the facts (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76, *supra*; *Matter of Spectrum Fabrics Corp.* [*Main St. Fabrics*], 285 App. Div. 710, 714, *supra*). It was not the province of Special Term to attempt to pass on the merits of the application.

The order appealed from, insofar as it refused to direct arbitration on the claims for severance and notice of dismissal pay, should be reversed and arbitration directed on those claims; and insofar as said order directed arbitration on claims for overtime, holiday and accrued vacation pay, it should be affirmed.

Bastow, Botein and Bergan, JJ., concur; Peck, P. J., dissents and votes to affirm.

Order, insofar as it refused to direct arbitration on the claims for severance and notice of dismissal pay, reversed and arbitration directed on those claims; insofar as said order directed arbitration on claims for overtime, holiday and accrued vacation pay, affirmed. Settle order on notice.