Mathewson, Appellant, *v.* Westinghouse Electric Corporation.

Argued November 10, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Albert C. Shapira,* with him *Chester B. Scholl,* for appellants.

*John G. Wayman,* with him *Leonard L. Scheinholtz, Fred T. Fruit,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 15, 1959:

The plaintiffs in this case are salaried employees of the Westinghouse Electric Corporation in Sharon and are members of the Sharon Westinghouse Employees Association, a union which entered into a collective bargaining contract with Westinghouse. On September 1, 1954, these employees, with approximately 139 other salaried employees, were given what was known as an Emergency Furlough because of a strike instituted by hourly paid employees, who belonged to another union. The salaried employees were not involved in the strike. The furlough, which was one without pay, ended on October 5, 1954, including within its period the holiday of Labor Day, September 6, 1954.

Section XII, subsection 2 of the collective bargaining contract, provides that: "Basic hours on an observed holiday will be credited as time worked for salaried employes." On the basis of this provision, the plaintiffs requested pay for Labor Day. It was refused and the plaintiffs brought an action in assumpsit for the respective amounts allegedly due them. The Court of Common Pleas of Mercer County entered judgment in their favor and the defendant corporation appealed

to the Superior Court, which reversed the lower court. This Court allowed allocatur.

The original contract of November 1, 1950, between the plaintiffs' union and Westinghouse provided for seven annual paid holidays, namely, New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas. The contract also stated that holidays occurring on Sunday would be observed on Monday. Since the Westinghouse plant in Sharon did not work on Saturdays, it followed that if a holiday fell on that day the employees enjoyed no paid leisure *that* day because they would not have worked on that day anyway. Thus, in September, 1952, the contract between the union and the corporation was amended to provide that when a holiday coincided with a Saturday, the employees would be accorded a free day during the week, the exact date of which would be agreed upon between the union and local management. Under this arrangement the free day could, and ordinarily would, occur many days after the particular holiday in whose honor it was celebrated. This chronological displacement thus could only mean that the employee was given the vested right of an established monetary benefit entirely removed from the intrinsic meaning and significance of the holiday itself. Therefore, in effect, the employee was guaranteed each year payment for seven days over and above what he was entitled to for the days actually worked.

On this basis, the plaintiffs contend that they have the legal right to pay for Labor Day of 1954, even though that day was parenthesized within the furlough period.

The defendant company, on the contrary, resists payment on the basis of subsection (b) of Section IX of the contract which says: "Emergency Furloughs are periods off without pay resulting from material short-

ages, power failure, labor disturbances or other conditions where transfer of employes to provide work is not feasible. When such conditions are anticipated, the subject will be discussed with the Affiliate Negotiating Committee."

"Without pay" in this section refers to salaried pay. It does not and cannot apply to monetary benefits guaranteed under other parts of the contract. The Mercer County Court of Common Pleas well expounded this feature of the case when it said: "As is well known, ordinarily the compensation of employes on salary, unlike that of hourly paid employes, is dependent upon lapsed time and not upon service rendered. Therefore, if the words 'without pay' had not been inserted, it would be inferred that salaried employes on furlough would draw their regular salaries. Inserting the words 'without pay' as a part of the definition of furlough employes removes this doubt. We are unable to accept the defendant's contention that the use of the words 'without pay' was intended to bar the right of an employe to receive special monetary benefits, other than regular salary, if the terms providing for such benefits do not limit them to those actively employed."

In illustration of this principle so logically expounded by the lower court, we draw attention to the situation where an employee is on emergency furlough during vacation months. In such a case, the employee receives his regular salary during his scheduled vacation even though it is enclosed within a furlough period. This is so, because vacation pay is not in the nature of compensation for the calendar days it covers. It is more like a contracted-for bonus for a whole year's work; a bonus which becomes vested in the employee because of the employer-employee relationship.*

---

* Judge LEARNED HAND said on this subject: "A vacation with pay is in effect additional wages. It involves a reasonable arrange-

If the employee were bound by the defendant's interpretation of Subsection (2b) of Section IX, namely, that the employee was barred from any monetary remuneration during the life of the emergency furlough, it would mean that he would be denied vacation pay as well, which denial, as we have just seen, would be contrary to equity, justice, and in fact, against the contract itself which specifically declares under Section XIII, subsection. (8) : "When an employe is removed from the active payroll for any reason, except disciplinary discharge, payment for vacation not taken for the current year will be made if the employe has qualified for vacation."

Even the defendant would not argue that a furloughed employee should be shut off from an earned vacation. In fact, in this respect, it was testified at the hearing in the lower court, that some employees received their vacation pay during the furlough although not on the regular payroll at the time. Holiday pay; thus being a special monetary perquisite, unrelated to regular salary, becomes, like vacation pay, an integral part of the compensatory structure within which one finds other benefits such as medical care, seniority rights, pensions, etc.*

---

ment to secure the well being of employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him." (*In Re Wil-low Cafeterias*, 111 F. 2d 429, 432)

* Robert L. Howard, Professor of Law, University of Missouri Law School, arbitrator in the case of *Carson Electric Co.*, 24 LA 667 (1955) has well said: "More recently, collective bargaining has brought about an almost universal recognition of holiday pay for

If it was the intention of the parties to the contract that no holiday pay was to be paid during the period of a furlough, it would have been a simple matter to add such a phrase to Subsection (2) of Section XII so that it would read: "Basic hours on an observed holiday will be credited as time worked for salaried employees, *unless the holiday falls within a furlough period.*"

The emergency furlough under consideration in this case was one declared by the defendant corporation, not one voluntarily assumed by the plaintiffs. The defendant corporation was thus naturally aware, before declaring the emergency that, according to the contract with the union, a furloughed employee was still carried on the active roll, accumulating seniority the same as if he were actually working and being paid. Subsection (2) of Section IX of the contract describes an employee on leave of absence as one who is not carried on the active roll but will accumulate service during leave of absence, a furloughed employee as one on the active roll and will accumulate service while on furlough, and an employee "laid off" as one not on the active roll and will not accumulate service. The furloughed employee accordingly appears in a preferred position. He is in effect an employee who stands outside the plant, ready to resume work as soon as the employer orders him to take up his tools.

In support of its position of non-payment, the defendant hypothesized the situation where an emergency furlough might last a year, complaining that in such a situation it would be unreasonable for the defendant to be required to pay for the seven unearned holidays. The

holidays not worked and added provisions for premium pay for holidays worked, not merely to prevent loss in take home pay, but as a so-called fringe benefit in the nature of a part of the overall wage picture."

lower court well replied to this supposititious case as follows: "In answer to this position, it may be noted that emergency furloughs are furloughs occasioned by material shortages, power failures, labor disturbances, or other conditions where transfer of employes to provide work is not feasible. These causes are of a nature that imply a brief work stoppage. While it is conceivable that a labor disturbance could exceed one year in length, it is probable that the employes on emergency furlough would be given some other status long before that period expired. Regardless of this consideration, however, in the present case, the strike which necessitated the furlough, began September 1, 1954, and ended five weeks later."

The Superior Court, in reversing the lower court, said: "In Kennedy v. Westinghouse Electric Corp. (N.J.), 108 A. 2d 409, 414, in which a collective bargaining agreement provided for the observance of the same holidays as in the instant contract, and in the same language, it was held: 'The clear implication is that the holiday provision [i.e., holiday with pay] was intended to assure that the take-home pay of an employee regularly earning wages for labor performed should not be diminished when the holiday is observed on a day during his regular work week.' The foregoing conclusion in the Kennedy case, with which we are in complete agreement as the only proper conclusion in this case, also refutes the contention that observed holidays constitute a unique kind of compensated leisure time."

But the language employed in the contract involved in the *Kennedy* case differs from the one used in the contract before us for consideration. There, the provision which was the bone of contention read: "Salaried employees will be paid for the seven holidays observed by the Companies falling within the work week, *Mon-*

*day to Friday,* both inclusive.". (Emphasis supplied) Here, to the contrary, as already stated, the parties agreed that payment would be made for any holiday which fell on Saturday. In the *Kennedy* case, the court specifically stated: "Section X prescribes a work week from Monday to Friday, and section XII provides for holiday pay *only* when the named holiday is observed on a day from Monday to Friday." (Emphasis supplied) We would thus not be disposed to regard the *Kennedy* decision as persuasive argument in behalf of the defendant's position in the case at bar.

We believe that the Court of Common Pleas of Mercer County was justified in concluding that "the emergency furlough provision of the contract is not a limitation on the holiday provision of the contract before us;" and "that the provision for holiday pay set forth in Section XII, subsection 2 is a special benefit which accrues to every salaried employee who qualifies for it by being on the active roll at the time the holiday occurs."

The order of the Superior Court is accordingly reversed and the judgment of the Court of Common Pleas is reinstated.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

"The Emergency Furlough" provision in the collective bargaining contract, in my judgment, clearly prevails over the holiday pay provision. I would affirm the Judgment of the Superior Court on the able opinion of Judge HIRT speaking for a unanimous Court.

Mr. Justice Benjamin R. JONES joins in this dissenting opinion.