GENERAL TIRE AND RUBBER CO., a Corporation, Plaintiff,

v.

LOCAL NO. 512, UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, AFL–CIO, a Labor Organization, John J. Soares, Defendants.

Civ. A. No. 2495.

United States District Court
D. Rhode Island.

Feb. 14, 1961.

Knight Edwards, John L. Clark, of Edwards & Angell, Providence, R. I., Louis S. Belkin, Cleveland, Ohio, for plaintiff.

Ralph P. Semonoff, Providence, R. I., Daniel Baker, Bertram Diamond, Stamford, Conn., for defendants.

DAY, District Judge.

This is an action brought under the provisions of section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185. Plaintiff seeks an injunction restraining the defendants from proceeding further with their demands for arbitration of the claims of certain members of the defendant, Local 512 (hereinafter called the Union), former employees of the plaintiff, for vacation pay allegedly due and owing them for the calendar year 1959 under the terms of a collective bargaining agreement be-

tween the plaintiff and said union, dated July 1, 1957.

The defendants duly filed their answer and a counterclaim wherein they prayed for the entry of an order compelling the plaintiff to proceed with and complete said arbitration in accordance with the terms of said collective bargaining agreement.

The matter is now before me upon the defendants' motion for summary judgment dismissing the plaintiff's complaint and granting the relief sought in defendants' counterclaim. This motion is supported by affidavit, and no counter affidavit was filed by the plaintiff. From the pleadings and said affidavit, the following facts may be taken to be undisputed.

By its terms said collective bargaining agreement was to become effective July 1, 1957, and was to continue in full force and effect through June 30, 1959, and was automatically renewable for yearly periods unless written notice was given by either party to the other, not less than sixty (60) days but not more than seventy-five (75) days prior to the expiration date or any extension thereof that it was desired to terminate or amend said agreement. Said agreement also provided that each of the parties thereto had the right to reopen the general wage scale for negotiation by giving a sixty (60) day written notice of such intention to the other party. In the event such negotiations were not concluded satisfactorily prior to the end of such sixty (60) day period, the agreement would terminate unless extended by mutual agreement. In July 1958 the defendant union gave the plaintiff due notice to reopen the general wage scale for negotiation. On July 31, 1958 the parties agreed to extend said agreement during negotiations, subject to termination on five (5) days notice. Negotiations were not satisfactorily concluded and on December 30, 1958 defendant presented the plaintiff with such a five (5) day termination notice which the plaintiff accepted in writing. On January 8, 1959 plaintiff's employees engaged in a strike authorized by the defendant union for the purpose of obtaining an increase in said general wage scale. Thereafter, on January 28, 1959, the plaintiff notified said employees that effective immediately it was closing down its plant and terminating their employment. The plant was then closed and has remained closed.

Said collective bargaining agreement in Article III thereof established a procedure for the settlement of grievances. It read in material part as follows:

"A grievance in order to receive consideration must be based upon a claimed violation of some right established by this Agreement, and must be submitted in accordance with the following procedure. * * * "

Said article then provided that an employee having a grievance should take certain steps with respect to his grievance before it could be submitted to arbitration, viz.: (1) reduction of grievance to writing and submission thereof by union steward to foreman involved; (2) if grievance is not adjusted at step 1, then submission thereof to production manager for disposition; and (3) if not adjusted at step 2, then submission by the union grievance committee to the company's grievance committee for settlement. In the event that said steps 1, 2 and 3 were unsuccessfully pursued, said Article provided that said grievance might be submitted to the impartial arbitrator named therein, whose decision would be final and binding upon both parties. Said Article also contained the following provision respecting the powers of said arbitrator:

"7. The impartial arbitrator shall not have the power to make any award changing or amending the provisions of this Agreement or the provisions of any supplemental Agreement. He shall confine his decision to the interpretation and/or application of this Agreement or any supplements thereto."

Article X of said agreement contained provisions for the payment of annual vacation pay to employees based upon a percentage of gross earnings during the previous calendar year, said percentage varying with length of service, and detailed provisions as to eligibility therefor, time of employment thereof, etc.

On February 9, 1959 the defendant union by letter to the plaintiff demanded that it pay said employees the vacation pay to which they were entitled under said agreement. This demand was refused by plaintiff on February 10, 1959. Under date of February 24, 1959 defendant union presented to the plaintiff a written grievance signed by an employee and a steward of the union claiming a violation of said Article X, in that the plaintiff refused to pay said employees vacation pay to which they were entitled under said article. In the letter accompanying said grievance it was stated that said grievance was presented at "Step No. 3" because the plant was closed and could not be processed through "Steps Nos. 1 and 2", and requested a meeting on February 27, 1959. In said letter it notified the plaintiff that its failure to respond would be regarded as a rejection of the grievance and the matter would be submitted to arbitration. Under date of February 25, 1959, the plaintiff replied to defendant union's letter in the following manner: "Since there is no legal substance to the claim outlined in your letter of February 24th, 1959, there is no need for further consideration."

On March 7, 1959, the union referred said grievance to arbitration before the impartial arbitrator, named in said agreement, who has refrained from taking action thereon pending determination of the merits of this action.

Plaintiff contends the defendants' motion should be denied because the dispute between the parties did not arise until after the termination of said collective bargaining agreement, and because the defendant union failed to utilize the preliminary steps for the adjustment of grievances provided in said Article III.

In Local No. 149, etc. v. General Electric Company, 1957, 250 F.2d 922, at page 927, the Court of Appeals for this Circuit clearly states the duty of a district court in a case such as this to be as follows:

"But when one of the parties needs the aid of a court, and asks the court for a decree ordering specific performance of a contract to arbitrate, we think that the court, before rendering such a decree, has the inescapable obligation to determine as a preliminary matter that the defendant has contracted to refer such issue to arbitration, and has broken this promise."

See also Boston Mutual Life Insurance Company v. Insurance Agents' Intern. Union, 1 Cir., 1958, 258 F.2d 516.

And in determining whether a reluctant party did agree to arbitrate a particular grievance doubts should be resolved in favor of coverage. In United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, at page 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, the Supreme Court held:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made.

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

■ Here the plaintiff obligated itself to submit to arbitration any grievance "based upon a claimed violation of some right established by this Agreement." While collective bargaining agreements are usually made for a fixed period, they generally contemplate renewals and a subsisting relationship between the employer and the union for an indefinite period of time. Hence, rights to which an employee may be entitled under such an agreement may not actually fructify in enjoyment until after the expiration of a particular contract period with reference to which they may be regarded as having been earned. Vacation pay is an example. Vacation pay is in the nature of deferred compensation, in lieu of wages earned each week the employee works and payable at some later time. Goodall-Sanford, Inc. v. United Textile Workers, 1 Cir., 1956, 233 F.2d 104; In re Wil-Low Cafeterias, 2 Cir., 1940, 111 F.2d 429; Textile Workers Union of America, A.F.L. C.I.O. v. Herbert B. Newton & Co., 1959, 394 Pa. 422, 147 A.2d 155; Botany Mills, Inc. v. Textile Workers Union, 1958, 50 N.J.Super. 18, 141 A.2d 107.

■ In my judgment the dispute between the parties is "based upon a claimed violation of some right established" by said collective bargaining agreement and involving its interpretation. In agreeing to arbitrate such grievances the parties did not differentiate between grievances arising during or after the termination of said agreement. Plaintiff's obligation to arbitrate grievances was not limited to only those which might arise during the life of said agreement. In the absence of such limitation its obligation must be deemed to include the arbitration of claims for vacation pay which were first asserted and rejected after the termination of said collective bargaining agreement. Matter of Potoker, 1957, 2 N.Y.2d 553, 161 N.Y.S.2d 609, 141 N.E. 2d 841, Cf. Wilson Bros. v. Textile Workers Union, D.C.N.Y.1954, 132 F.Supp. 163, appeal dismissed, 2 Cir., 1955, 224 F.2d 176.

■ Plaintiff's second contention requires little discussion. It is clearly without merit. Under the circumstances existing after January 28, 1959, e. g., the discharge by plaintiff of said employees and the closing of its plant, it was impossible for the union to pursue all the preliminary steps of said grievance procedure. Moreover, the plaintiff's attitude, as evidenced by its letter of February 25, 1959, made it obvious that pursuit of said procedure would have availed the union nothing. Faced with this attitude, the union was not required to do a vain and useless thing. Ass'n of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 3 Cir., 1960, 283 F.2d 93; United Protective Workers v. Ford Motor Company, 7 Cir., 1952, 194 F.2d 997; United Protective Workers of America, Local No. 2 v. Ford Motor Company, 7 Cir., 1955, 223 F.2d 49.

Defendants' motion is granted. Judgment will be entered dismissing the plaintiff's complaint and ordering the plaintiff to proceed with and complete said arbitration now pending before said impartial arbitrator, in accordance with the terms of said collective bargaining agreement dated July 1, 1957.