Taylor *v.* Southern Pennsylvania Bus Company, Appellant.

**230**

Argued September 13, 1963; reargued March 19, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*C. E. Thomas*, with him *Edward F. Cantlin,* and *Hinkson & Cantlin,* for appellant.

*Cornelius C. O'Brien, Jr.*, with him *Matthew J. Ryan, III*, and *Joseph W. deFuria*, for appellees.

OPINION PER CURIAM, November 13, 1963: ·

The six judges who heard the argument of this appeal being equally divided in opinion, the judgment of the lower court is affirmed.

OPINION BY WOODSIDE, J., April 14, 1964:

This is an appeal from a judgment for the plaintiffs entered on a case stated. It involves the amount of vacation pay to which former employes of the defendant are entitled.

A collective bargaining agreement between the parties covered the period of two years from March 21, 1958 to March 21, 1960. The agreement was not renewed and the plaintiffs performed no services for the defendant after it was terminated on March 21, 1960. On that date the plaintiffs went on strike and subsequently the defendant went out of business, selling its franchise, buses and equipment.

Article 15 of the collective bargaining agreement, in effect during these two years, deals with vacations of bus operators and is set forth in full in the footnote.[1]

---

[1] "ARTICLE 15—Section 1—Vacations

"All operators who have been in the employ of the Company one year or more will be given two weeks' vacation with pay. All operators who have been with the Company continuously for ten years or longer will be given twenty-one days' vacation with pay. The amount of two weeks' vacation pay of each operator will be equal to 14/365ths of the total wages earned by such operator in the year prior to his vacation date. The amount of twenty-one days' vacation pay for each operator entitled to such vacation will be equal to 21/365ths of the total wages earned by such operator in the year prior to his vacation date. Vacation periods for employees who are entitled to twenty-one days will consist of fourteen days between June 1st and September 30th, and the remaining seven days at any other time, or three separate periods of seven days each. An operator may, however, take his vacation period all at one time in the period between September 30th and June 1st. Vacation periods for others will be the same as in the present contract. In determining the vacation pay earned by each opera-

Our problem concerns primarily the interpretation of the following: "All operators who have been in the employ of the Company one year or more will be given two weeks' vacation with pay. All operators who have been with the Company continuously for ten years or longer will be given twenty-one days' vacation with pay. . . . Employees eligible for vacation pay who are dismissed . . . or leave the service before their next vacation date will receive vacation pay prorated on the time they have worked from January 1st of the year they leave the service. . . . A schedule showing vacation periods for the following year will be prepared. . . . Operators are to choose their vacation periods in accordance with their seniority at the same time they select their runs at the December pick. . . ."

tor, time lost by such operators who have been off two weeks or longer on account of sickness, and time lost by Committee members of the Brotherhood while engaged in work affecting the Company and the Brotherhood will not be included. Employees eligible for vacation pay who are dismissed (except for dishonesty or drinking intoxicants before or on duty) or leave the service before their next vacation date will receive vacation pay prorated on the time they have worked from January 1st of the year they leave the service.

"Section 2. A schedule showing vacation periods for the following year will be prepared by the Company and posted in the Operators' Room on or about December 1st of each year. Operators are to choose their vacation periods in accordance with their seniority at the same time they select their runs at the December pick. If a vacation is not picked or a vacation selection is not left with the dispatcher on the day the operator should pick his run, vacation period will be picked for the operator, as close to the operator's last vacation period as possible, by the dispatcher and a Brotherhood representative. If a selection is left but all vacations for that period have been picked, a vacation period will be selected by dispatcher and a Brotherhood representative as close as possible to the original vacation period selected.

"No operator will be permitted to work during the vacation period, if, and when, there are qualified extra operators available to work the assignment."

The plaintiffs comprise those operators who selected vacation dates in 1960 subsequent to March 21. They claim first that they are entitled to compensation in lieu of the paid vacations they would have received in 1960 if they had continued through their scheduled vacation dates, and in addition they claim vacation pay prorated on the basis of their employment between January 1, 1960 and March 21, 1960. The court below allowed both of these claims. The defendant has appealed only from the allowance of the first claim.

Subject to a few minimum standards imposed by law, employes and their employer may enter into such contract of employment as they can agree upon. When the parties to a written contract of employment cannot agree upon its meaning and seek the aid of the courts, we must give the contract a reasonable interpretation, according to the intention of the parties, if that intention can be ascertained from its language. *Silverstein v. Hornick,* 376 Pa. 536, 540, 103 A. 2d 734 (1954).

The contract here covered a two year period, and involves the service to be rendered and the payment and benefits to be received during that period. It appears to us that the court below has allowed the plaintiffs three annual vacation periods during the two years of the contract. We do not find any justification for this in the language of the contract, and we believe it is an unreasonable interpretation.

The contract was entered into in March 1958 and provided that the employes will be given vacations with pay. Under that contract the employes were entitled to and undoubtedly received vacations with pay in 1958 and in 1959. They also were entitled under the contract for "vacation pay prorated on the time they have worked from January 1st of the year they leave the service," and they have judgment for the vacation pay for this period in 1960.

It is a strained construction to hold that the language of the contract provides for *two* vacations in the year when the employment ceases, but that is what the plaintiffs contend. The court below accepted this interpretation on the ground that sometime in the past there was a year when the plaintiffs must have worked without receiving any vacation and therefore the employes "earned" a vacation which they had not received. In other words, the court held that the employes even though they may have had a vacation each year for any number of years, nevertheless had a vacation in reserve and when anyone of them quit, other than on the last day of the year, he was entitled under the agreement to both an annual vacation *and* the fractional vacation to which the contract refers.

The employment contract provides that "all operators who have been in the employ of the Company one year or more will be given two weeks' vacation with pay." The appellees argue, and the court below believed, that this means all the plaintiffs had "earned" an annual vacation which they have not received. We cannot accept this reasoning. The contract says nothing about earning a vacation during the first year of employment. The clause "who have been in the employ of the Company one year or more" qualifies "operators" and hence is determinative of those operators who are to be given vacations with pay.

We can gather from Article 15, which is all of the contract which is before us, that there was a prior contract of employment and that some of the employes covered by it had worked for the company more than ten years. We know nothing of the terms of any prior contract concerning vacations or what the policy of the company concerning vacations may have been when the operators were first employed. It is possible that under some prior contract all of the plaintiffs received vacations the first year of their employment.

We shall assume, however, that none of the plaintiffs received a vacation until after he had been employed by the defendant for one year. The contract provides for the apportioning of vacations on a calendar year basis and the annual vacations are allocated on a calendar year basis, but the "year" within which an employe was not entitled to a vacation was the 365 days subsequent to the day he was employed, and the "year" which fixed his vacation pay was the 365 days prior to his vacation date. Thus an operator who became an employe in 1958, with the possible exception of one who became employed during the last two weeks of the year, was entitled under the contract to a vacation in 1959, and we presume that the contract was carried out and that such employes, along with all the plaintiffs who had been employed prior to 1958, received the annual vacation in 1958 and again in 1959. There is nothing in the case stated from which we could conclude that any of the plaintiffs were employed less than a year or that there were any plaintiffs who did not receive vacations in 1958 and 1959. The plaintiffs with approximately three months employment in 1960 are entitled to approximately one-fourth their annual vacation pay but not one and one-fourth times that amount.

It is argued that such an interpretation discriminates against an operator who might have become employed on January 1 and who might have quit December 31. A contract of employment which related to many operators whose employment started at different times, whose vacations were taken at different times and whose separation from employment was expected to occur at different times was not likely to affect each employe with perfect equality. An employe who had quit immediately after taking an annual vacation would not have received equal treatment with his co-workers either, although in that case the em-

ployer might have paid *more* than he would have been required to pay had the amount "earned" during the exact period of employment been the test.[2] It was not the intent of the parties as expressed in the contract that each employe should have the *exact* amount of vacation "earned," based upon the exact time he was employed. A provision could easily have been drawn to do this, but for obvious reasons such a provision would have complicated the annual arrangement of the vacation periods. But we need not speculate on why the stated method for vacations was agreed upon during the bargaining. The fact is that the agreement does not attempt to base vacation pay on the *exact* time each employe was employed by the defendant.

The plaintiffs contend that they continued as employes after March 21, 1960, because when an employe goes on strike, he remains in the status of an employe, citing *Oluschak Unemployment Compensation Case,* 192 Pa. Superior Ct. 255, 159 A. 2d 750 (1960) and *Melchick Unemployment Compensation Case,* 396 Pa. 560, 154 A. 2d 875 (1959). Although this may be true under some circumstances, here the bus operators came to the end of the line on March 21, 1960. The case stated suggests no other possible date when the employment relationship ceased to exist.

We have examined the cases of other jurisdictions cited by the appellees and even if we were to accept their reasoning, it would not follow that the appellees' contention is correct.[3] As far as we can deter-

---

[2] For example, a person who was employed December 1, 1957 could have taken a vacation in December 1958, another in January 1959 and then quit in February 1959, thus receiving two annual vacations during less than 15 months employment.

[3] *Wil-Low Cafeterias, Inc.,* 111 F. 2d 429 (2d Cir. 1940) and *Textile Workers of America v. Paris Fabric Mills, Inc.,* 18 N. J. Super. 421, 87 A. 2d 458 (1952).

mine, there was no provision for partial vacation periods in the contracts interpreted in those cases. Be that as it may, we are here dealing with a situation and a contract differing from those considered in the cited cases. This is also true of *Mathewson v. Westinghouse Electric Corp.*, 394 Pa. 518, 147 A. 2d 409 (1959), cited by the appellees.

Judgment of the court below is opened and the record remanded for the entry of a judgment in the amounts consistent with this opinion.

WRIGHT, MONTGOMERY, and FLOOD, JJ., would affirm on the opinion of Judge TOAL for the court below.