## Taylor, Appellant, *v.* Southern Pennsylvania Bus Company.

Argued November 18, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Cornelius C. O'Brien, Jr.,* with him *Matthew J. Ryan, III,* and *Joseph W. deFuria,* for appellants.

84.

Charles E. Thomas, with him Edward F. Cantlin, and Hull, Leiby and Metzger, and Hinkson and Cantlin, for appellee.

OPINION BY MR. JUSTICE JONES, March 23, 1965:

On March 21, 1958, Southern Pennsylvania Bus Company (Bus Company), and the Union representing the bus operators (operators), employed by the Bus Company entered into a collective bargaining agreement the term of which expired on March 21, 1960. This agreement expired without renewal on March 21, 1960, and the operators went on strike. The strike was never settled, the operators performed no services after March 21, 1960 and later on the Bus Company went out of business.

In December 1959 the operators, under the provisions of the collective bargaining agreement and in anticipation of continued employment throughout 1960, on a seniority basis had selected the dates on which they elected to take their vacations in the year 1960. Eighty-three operators, who had selected vacation dates subsequent to March 21, 1960, and claimed compensation in lieu of "vacation pay", instituted assumpsit actions in the Court of Common Pleas of Delaware County. The operators and the Bus Company then agreed and stipulated that the matter be submitted to the court as a "Case Stated". Three questions were thus presented for determination:

(a) Upon termination of the collective bargaining agreement on March 21, 1960, did the operators become entitled to the vacation pay they would have received had they continued in the Bus Company's employment through their selected vacation periods later in 1960?

(b) Upon termination of the collective bargaining agreement on March 21, 1960, did the operators become entitled to vacation pay prorated upon the basis

of their employment during the period January 1, 1960 to March 21, 1960?

(c) Upon termination of the collective bargaining agreement on March 21, 1960, were those operators who had not theretofore taken a day off with pay entitled to a day's pay in lieu thereof? The Court of Common Pleas of Delaware County answered questions (a) and (b) affirmatively, i.e., in favor of the operators, and entered judgments accordingly in favor of the operators and answered question (c) negatively, i.e., in favor of the Bus Company. Neither the operators nor the Bus Company challenged by appeal the court's decision on questions (b) and (c)[1] but the Bus Company appealed to the Superior Court the determination of question (a).

The Superior Court, speaking through Judge Woodside, opened the judgments entered in the court below. We granted allocatur.

Succinctly stated, the sole issue before this Court is whether the operators who chose, unwittingly, vacation dates in 1960 subsequent to March 21, 1960—the date of expiration of the collective bargaining agreement—are entitled to compensation in lieu of their "vacation pay" which they would have received had they continued in employment during the balance of the year 1960?

The parties have agreed that *as to the issue presently before us* the validity of the operator's claims depends upon the construction of Article 15, Sections 1 and 2 of the collective bargaining agreement. The pertinent provisions of Article 15 are: "All operators who have been in the employ of the Company one year or

---

[1] The presently unchallenged findings of the Court of Common Pleas of Delaware County are: (1) that the operators receive vacation pay for the period January 1, 1960 to March 21, 1960; (2) that the operators would not receive compensation for paid holidays which had not been taken prior to March 21, 1960.

more will be given two weeks' vacation with pay. All operators who have been with the Company continuously for ten years or longer will be given twenty-one days' vacation with pay. . . . Employees eligible for vacation pay who are dismissed . . . or leave the service before their next vacation date will receive vacation pay prorated on the time they have worked from January 1st of the year they leave the service. . . . A schedule showing vacation periods for the following year will be prepared. . . . Operators are to choose their vacation periods in accordance with their seniority at the same time they select their runs at the December pick. . . ."

We have carefully examined the pertinent portions of the collective bargaining agreement and agree with the majority of the Superior Court that a reasonable interpretation of the language of that instrument leads to the conclusion that the parties to the agreement did not intend the result contended for by the operators.

The order of the Superior Court is affirmed on the able opinion of Judge WOODSIDE.[2]

Mr. Justice MUSMANNO dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

In my view of the disputed contract an employee's right to two weeks' vacation with pay accrues at the end of the full year of employment immediately preceding the year in which he actually takes his vacation. The employee's paid vacation is part of the consideration for his services for the year prior to the year of his vacation.[1]

---

[2] See: 203 Pa. Superior Ct. 229, 199 A. 2d 745.

[1] These jurisdictions have adopted the "payment for past services rationale": *In re Wil-Low Cafeterias, Inc.*, 111 F. 2d 429 (2d Cir. 1940) ; *In re Public Ledger, Inc.*, 161 F. 2d 762 (3d Cir. 1947) ; *Brampton Woolen Company v. Local Union No. 112*, 95 N.H. 255, 61 A. 2d 796 (1948) ; *Division of Labor Law Enforcement, State*

The vacation pay clause regulating the year that the employee quits or is dismissed creates a separate and distinct right to prorated consideration in recognition of the fact that the employee has worked part of a year but won't be able to take his vacation. The employer's contention that paid vacations were in consideration for continued employment does not accord with the employer's own practice of allowing vacations at the beginning of the year of employment alleged to be the consideration for the vacation. Nor does it accord with what I think would be the legitimate expectation of an employee who was told that if he worked a year he would get two weeks' paid vacation.[2] The majority's interpretation of the contract would require the employee to work a full year in order to be eligible to work another full year to earn the vacation with pay. This employer did not so interpret the contract in the past and I would not permit such an interpretation now.

I dissent.

Mr. Justice EAGEN joins in this dissent.

---

of *California v. Sampsell*, 172 F. 2d 400 (9th Cir. 1949) ; *Kavanas v. Mead*, 171 F. 2d 195 (4th Cir. 1948) ; *Textile Workers of America v. Paris Fabric Mills*, 18 N.J. Super. 421, 87 A. 2d 458 (1952) ; *Calvine Cotton Mills, Inc. v. TWUA*, 238 N.C. 719, 79 S.E. 2d 181 (1953) ; *Owens v. Press Publishing Co.*, 20 N.J. 537, 120 A. 2d 442 (1956) ; *Botany Mills, Inc. v. Textile Workers Union of America*, 50 N.J. Super. 18, 141 A. 2d 107 (1958) ; *Matter of Potoker*, 286 App. Div. 733, 146 N.Y.S. 2d 616 (1955) affirmed sub. nom. *Matter of Potoker (Brooklyn Eagle)*, 2 N.Y. 2d 553, 161 N.Y.S. 2d 609, 141 N.E. 2d 841 (1957) and *General Tire & Rubber Co. v. Local No. 512, etc.*, 191 F. Supp. 911 (D.C.R.I. 1961), as well as numerous cases reported in the Labor Arbitration Reports. See also Survival of Earned Rights, 54 Nw. U.L. Rev. 646 (1959).

2 The contract provides: "All operators who have been in the employ of the Company one year or more will be given two weeks' vacation with pay."