## Hahn v. City of Pittsburgh

*A. Bryan Campbell*, for plaintiff.

*Daniel M. Curtin*, Assistant City Solicitor, for defendant.

DOYLE, J., December 18, 1973.—This appeal from an award of a board of arbitrators has been cast as a "case stated." The stipulated facts are as follows:

Plaintiff Edmund P. Hahn (plaintiff) was employed as a police officer in the Bureau of Police (bureau), City of Pittsburgh, Pa. (city), from February 4, 1954, until June 1, 1972. On March 2, 1972, Hahn sustained a myocardial infarction and was placed in "disability status" by the city. During the period of March 2, 1972, through May 31, 1972, plaintiff was paid disability compensation by the city in the amount of his full regular salary in accordance with the statute governing disability for policemen and firefighters: Act of December 15, 1959, P. L. 1750 (No. 655), as amended by the Act of March 5, 1970, P. L. 130 (No. 51), 53 PS §637. On June 1, 1972, plaintiff retired as a result of his disability.

Since June 1, 1972, the city has paid to plaintiff a permanent disability pension equal to 50 percent of his $10,500 per annum salary in accordance with the Act of May 22, 1935, P. L. 233 (No. 99), as amended by the Act of December 12, 1968, P. L. 1205 (No. 378), sec. 1, 53 PS §23658. Plaintiff also receives $60 per week in workmen's compensation benefits to which he is entitled under the Act of June 2, 1915, P. L. 736 (No. 338), sec. 306(a), as amended by the Act of March 29, 1972, P. L. 105 (No. 61), 77 PS §511, 542.

Prior to March 2, 1972, date of disability, plaintiff had worked on three declared legal holidays for which he was not granted compensatory leave. Based upon his annual salary, his claim for this service amounts to $81.62. At the time of his retirement, plaintiff had not taken any vacation during the year 1972. City Ordinance No. 14, approved January 28, 1971, establishes annual vacation *leave* for all full-time employes in the service of the city and provides for vacation

pay in the event of termination of service. Plaintiff had accumulated 18½ years of service for which he claims four calendar weeks vacation pay, viz.: $807.70.

The parties stipulated to city ordinances and general orders of the bureau relating to vacation pay and holiday pay for city employes.

## VACATION PAY

The issue before the court is whether or not vacation entitlement accrues during a fraction of a calendar year of employment under the pertinent statutes and ordinances.

Although the city and representatives of the bureau negotiated an employment agreement which was effective during the first six months of 1972, that agreement is not part of the "case stated."

City Ordinance No. 14 established annual vacation *leave with pay* and vacation *pay* in the event of death or termination for all full time city employes. That ordinance provides, inter alia:

"Each employee of the City of Pittsburgh shall be entitled to vacation with pay after one (1) year of service from the beginning date of employment and during each subsequent calendar year thereafter. For the purposes of this ordinance, 'employee' means each employee of the City of Pittsburgh who works 225 or more days per calendar year on a daily, monthly or per annum basis. Accrual of vacation leave after the first year of service shall be computed from the first day of the calendar year." (§1).

The parties have stipulated that plaintiff's length of service entitled him to four weeks vacation with pay.

That ordinance further provides:

"The head of each department shall arrange each

employee's vacation time in accordance with the needs and schedule of business for each department": Section 3.

"Each employee must take the vacation to which he is entitled hereunder during the year in which it accrues and said vacation cannot be carried over to any succeeding year": Section 4.

"Termination"—

"In the event of termination of employment of an employee who has not yet received accrued and unused vacation for the calendar year, the employee shall receive such vacation prior to termination of employment. The termination date shall be deemed deferred until the end of the vacation period": Section 6.

Bureau General Order BWD 5-6 ("Bureau Order 5-6"), largely parallels Ordinance No. 14 but also provides:

"Vacations may be taken at any time within the calendar year beginning January 1, to December 15th, inclusive": Section 3.1.

This section must be read together with section 1(4) of Bureau Order 5-6, corresponding to section 3 of Ordinance No. 14, providing that vacation scheduling shall be arranged and approved by department heads based upon manpower needs.

Plaintiff contends that when his employment with the city terminated June 1, 1972, he had accrued an entitlement to four weeks vacation with pay and that not having taken such vacation he is entitled to its cash value. The city contends that plaintiff's failure to request and take his vacation prior to termination has extinguished his vacation rights.

Vacation pay is compensation for work actually performed; payment being deferred to some later time: General Tire & Rubber Co. v. United Rubber

Workers, etc., 191 F. Supp. 911 (D.C.R.I., 1961). See also, Goodall-Sanford, Inc. v. United Textile Workers, etc., 233 F.2d 104 (1st Cir., 1956), affirmed on other grounds, 353 U.S. 550 (1957); Division of Labor Law Enforcement v. Sampsell, 172 F.2d 400 (9th Cir., 1949); Kavanas v. Mead, 171 F.2d 195 (4th Cir., 1948); Public Ledger, Inc., 161 F.2d 762 (3rd Cir., 1947); In re Wil-Low Cafeterias, Inc., 111 F.2d 429 (2nd Cir., 1940); Taylor v. Southern Pennsylvania Bus Co., 418 Pa. 82 (1965) (dissenting opinion); Mathewson v. Westinghouse Elec. Corp. 394 Pa. 518 (1959).

A paid vacation is "a supplement to the employment agreement which, in effect, constitutes an offer of reward or additional wages for constant and continuous service": Division of Labor Law Enforcement v. Ryan Aeronautical Co., 106 Cal. App. 2d 833, 236 P.2d 236 (1951). Similarly, a vacation with pay is in the nature of additional wages involving a reasonable arrangement to secure the well-being of employes and the continuance of harmonious relations between employer and employe: Wil-Low Cafeterias, supra. It is now well established that "[pre-employment] agreement to pay vacation pay to employees . . . based upon length of service and time worked, is not a gratuity, [it] is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation": Textile Workers' Union of America v. Paris Fabric Mills, Inc., 18 N.J. Super. 421, 87 A. 2d 458, affirmed 22 N.J. Super. 381, 92 A.2d 40 (1952).

Vacations have been characterized as a recess or as a leave of absence, or a time of respite from active employment: Dauber's Case, 151 Pa. Superior

Ct. 293 (1943); Bondio v. Jos. Binder, Inc., 24 So.2d 398 (La. App. 1946). However, the regularity with which the "deferred compensation" theory has been accepted in recent years, forces the conclusion that the "leave of absence" theory has been abandoned de facto. We now abandon it de jure. We believe that our conclusion is supported by sound reason: (1) During labor contract negotiations, vacations with pay are frequently bargained for in lieu of the equivalent cost of wage increases in cents per hour; (2) vacations are labor costs to the employer as fully tax deductible as the cost of other items of production; (3) vacation pay is taxed to the recipient as earned income; (4) vacation pay is not a gratuity; it is a bargained for exchange; (5) vacation time and its concomitant, vacation pay, is necessary to refresh, reconstitute and rehabilitate workmen as surely as "shutdowns" are necessary to repair production machines.

Courts disagree as to whether or not an employe who leaves the service of his employer after the employe has qualified for a vacation with pay is entitled to the vacation, or the money that would have been paid to him if he had remained an employe and taken his vacation. If a vacation is treated as a means whereby a worker's energy can be replenished in preparation for additional service, vacation pay would not be appropriate where the employe does not return to work for the employer. If vacation pay is treated as having been accrued during productive working time and as being deferred compensation, and if the employe has already worked the requisite period to qualify for a vacation and fulfilled other essential conditions precedent, it must follow that the vacation, or equivalent pay, has been earned prior to termination and should be paid: Annot.,

30 A.L.R. 2d 348 (1953). See also 54 Northwestern U.L. Rev. 646 (1959).

Ordinance No. 14, sec. 1, and Bureau Order 5-6 require that the following conditions must be fulfilled to vest the right to paid vacations within the Police Department: (1) An employe must complete one year of service as a condition precedent to the earning of any vacation rights; (2) only full-time employes, meaning those who work 225 or more days per year, may earn vacation rights.

Plaintiff was continuously employed by the city on a full-time basis from February 4, 1954, through June 1, 1972, thereby fulfilling both of the recited conditions. Although physically disabled and, therefore, unable to perform his normal duties from March 2, 1972, through June 1, 1972, his employe status remained unchanged until his retirement on June 1, 1972. The requirement that employes work 225 days or more per year serves to define a category of employes entitled to vacation based upon the number of days per year an employe occupying a particular job description is expected to work. This provision of the ordinance does not imply, nor do we infer from its language, that employes must *complete* 225 days of service per calendar year before they have earned *any* vacation rights.

Ordinance No. 14, sec. 4, provides that an employe "must take the vacation to which he is entitled hereunder during the year in which it accrues and said vacation cannot be carried over to any succeeding year." On its face, this provision appears to bar the accumulation of vacation benefits and, in a subsequent year, "cashing in" the accumulated rights to create a longer vacation period than would have been permitted absent such accumulation. A substantial number of decisions in adjudicated cases

expressly prohibit the extinguishment of earned vacation rights where an employe has been involuntarily separated from his employment, e.g., lay-offs, total suspension of the employers' operations. See Public Ledger, supra; Knapp v. Atlantic Basin Iron Works, Inc., 116 N.Y.Supp. 2d 456 (Mun. Ct. 1952); In re Brooklyn Citizen, 90 N.Y.Supp. 2d 99 (Sup. Ct. 1949); Wellman v. Riley, 95 N.H. 507, 67 A.2d 428 (1949).

The circumstances which forced plaintiff into a disability status and, later forced his retirement from the police department, were of an involuntary nature, since continuance of his regular work as a police officer would have unreasonably hazarded his health. He may not be penalized by a public employer for taking action appropriate to his physical condition.

Having held that vacation pay is in the nature of deferred compensation and that plaintiff's retirement was involuntary, we must determine what vacation rights, if any, had accrued to Hahn prior to his retirement on June 1, 1972. When the parties to a written contract of employment contained, in part, in the relevant ordinances and bureau orders, cannot agree upon its meaning, we must construe the contract according to reasonable interpretations consistent with the expressed intent of the parties: Silverstein v. Hornick, 376 Pa. 536 (1954).

A condition precedent to receipt of any vacation under Ordinance No. 14, sec. 1, is one year of full-time employment. Thus, it may be inferred that in the second year of employment a two-week vacation with pay accrues as a result of having worked the requisite first year and the continuation of the employment relationship into the second year. Bureau Order 5-6, §3.1, provides that: "vacations may be taken at any time within the calendar year beginning January 1 to December 15th, inclusive." From this

language it is clear that plaintiff could have opted to take his 1972 vacation as early as January 1, 1972, subject to approval by his station or division commander. It must be presumed that had he done so, he would have had expended vacation benefits prior to having earned them in full.[1]

Permitting an employe to take a vacation with pay prior to the end of the calendar year in which the vacation is earned or accrued, benefits employes who never complete their employment for the calendar year in which the vacation is taken. In other cases, such scheduling satisfied the practical needs of employers who, in order to maintain a sustained level of productivity throughout the year, stagger employe vacations more or less evenly throughout the calendar year.

Plaintiff's "failure" to arrange his vacation prior to his separation from service has the effect of forever removing vacation pay rights beyond those actually earned and accrued on a daily basis during 1972. That such results are sometimes inevitable was recognized in Taylor, supra, 203 Pa. Superior Ct. 229 (1964), by the eminent Judge Woodside:

"A contract of employment which related to many [employes] whose employment started at different times, whose vacations were taken at different times and whose separation from employment was expected to occur at different times was not likely to affect each employe with perfect equality. An employe

---

[1] To hold otherwise would mean that all of plaintiff's 1972 vacation rights were earned in 1971. Under that interpretation plaintiff could claim that he is entitled to four weeks vacation earned in 1971 plus vacation rights earned on a daily basis for the period of employment in 1972. This result is specifically precluded by Taylor, supra. The strong dissent in that case, however, suggests that a literal application of the "deferred compensation" theory would require just such a result.

who had quit immediately after taking an annual vacation would not have received equal treatment with his co-workers either, although in that case the employer might have paid *more* than he would have been required to pay had the amount 'earned' during the exact period of employment been the test. (footnote omitted) It was not the intent of the parties as expressed in the contract that each employe should have the *exact* amount of vacation 'earned,' based upon the exact time he was employed. A provision could easily have been drawn to do this, but for obvious reasons such a provision would have complicated the annual arrangement of the vacation periods." (Italics in original.)

That plaintiff is entitled to recover some vacation pay for the time he was employed is demonstrated by the language of Ordinance No. 14, sec. 6 and republished in Bureau Order 5-6, sec. 1.6, which provides that the retiring employe *shall receive prior* to retirement all accrued and unused vacation for that calendar year. The city must assure that retiring employes do not leave their jobs before they have *received* their vacation benefits, or pay in lieu thereof, accrued and earned during the part of the calendar year in which the employe retires. The city could have apprised plaintiff of the vacation rights which he had earned prior to his retirement. Pursuant to Bureau Order 5-6, sec. 1.6, plaintiff's termination date would thereby have been deemed deferred until the end of the vacation period or until termination of his disability status, whichever later occurred.

Plaintiff is entitled to a pro-rata share of compensation in lieu of a vacation entitlement computed from January 1st through June 1, 1972.[2] This result implements the stated purpose of Ordinance No. 14, viz:,

---

[2] 5/12 of four weeks pay at plaintiff's salary level = $336.55.

the establishment of *vacation pay* in the event of termination of employment by all full-time City employes.

## HOLIDAY PAY

During 1972, and prior to his retirement, plaintiff worked on three holidays for which he has not received compensatory time off.

City Holiday Ordinance No. 12, effective February 3, 1964, and corresponding Bureau General Order BWD 5-5 (Bureau Order 5-5) controls the disposition of this issue.

Ordinance No. 12, §1, provides:

"All employees of the City of Pittsburgh shall be entitled to the following holidays or equal time off duty with pay. The holidays shall be: New Year's Day, Lincoln's Birthday, Washington's Birthday, Good Friday, Memorial Day, Flag Day, Independence Day, Labor Day, Columbus Day, General Election Day, Veteran's Day, Thanksgiving Day, Christmas Day."

Section 2 provides:

"Department heads may schedule skeleton forces on holidays and allow compensatory time off duty with pay to employees required to work on holidays."

The following Bureau Order 5-5 sections are apposite:

Section 3.1 provides:

"When it is necessary for a member or employee of the Bureau of Police to work on a holiday, he shall be given comensurate [sic] time off as soon after the holiday as is possible."

Section 3.4 provides:

"All holiday passes shall be used within thirty days from the date of the holiday."

However, this provision is modified by section 3.2 which provides:

"Comensurate [sic] time off shall shall be given with the approval of and at the discretion of the members [sic] or employees [sic] supervisor."

Section 3.6 provides:

"All accrued holiday passes shall be used before the first day of April of each calendar year. This includes the holiday saved from the previous year as well as all holidays that occur from January 1."

Section 3.7 provides:

"Any holiday that is not used within 30 days from the date of the holiday will be disposed of by the supervisor in charge who shall notify the member or employee that a specific day has been assigned for use of the holiday."

Section 3.5 provides:

"One (1) holiday pass may be carried over into the following year."

Although the recited provisions constitute a pyramid of modifiers upon modifiers, when considered together they provide that a policeman who works on an enumerated holiday is entitled to compensatory time off with pay, the scheduling of which is determined by his supervisors. However, an employe who does not arrange to use his compensatory time off within 30 days of the holiday, will have that time off scheduled *for* him by his supervisors.

Plaintiff performed his duties on three of the enumerated holidays for which he received no time off. No stipulated fact suggests that a substitute date was scheduled either at plaintiff's initiative or at the instance of the bureau. We are compelled to assume that that result was based on the manpower needs of the police department and with the knowledge of plaintiff's supervisors.

The fact that, prior to termination, plaintiff was afforded no opportunity to avail himself of the extra

time off he had earned, is insufficient reason to deny him such entitlement now, when he is physically unable to continue in his former job. By performing his regular duties on holidays, he vested his right to the prescribed remuneration subject only to approval by his superiors as to when such remuneration should be collected based upon the convenience of the department. The fact that it may have been inconvenient for the employer to arrange the time off prior to plaintiff's retirement cannot be construed to divest plaintiff's pre-existing right to be paid for services performed.

An appropriate order will be entered.

### ORDER

And now, December 18, 1973 we find in favor of plaintiff and against defendant in the sum of $418.17 with interest from June 1, 1972.